BENJAMIN F. BUTLER *vs.* DEXTER HILDRETH.

An assignee of an insolvent debtor, under *St.* 1838, *c.* 163, may affirm a sale of goods made by such debtor for the purpose of delaying or defrauding his creditors, and receive the price of the goods from the vendee. And if such assignee, knowing all the facts of the case, brings an action against the vendee, on a note given by him for the price of the goods, and secures the demand by an attachment of his property, he thereby so far affirms the sale, and waives his right to disaffirm it, that he cannot, by discontinuing such action and demanding the goods, entitle himself to maintain an action of trover against the vendee, on his refusal to return them.

THIS case came before the court on the report of *Putnam*, J. before whom a trial was had in December 1841.

*Butler, pro se.*

*J. G. Abbott,* for the defendant.

SHAW, C. J. The plaintiff is assignee of Messrs. Thurston and Pickering, insolvent debtors, under the insolvent law of 1838. This action is trover to recover the value of a quantity of goods, sold by the insolvent debtors to the defendant, some months before the proceedings under the insolvent law were commenced, and for which the defendant gave his promissory notes, payable on demand. These notes came into the plaintiff's hands, as part of the effects of the insolvent debtors, and were produced at the trial, and put on file, to be delivered up to be cancelled, if the plaintiff prevails in this suit.

It is stated in the argument for the defendant, that the notes were not all delivered up, but that the defendant had paid some of them. This statement contradicts the report, and we must take the report as our guide.

The plaintiff claims the goods for the benefit of the creditors of the insolvents, on the ground that they had been fraudulently conveyed to the defendant, in order to delay and defraud their creditors, and that therefore the sale was void as to creditors, and that the plaintiff, as the representative of the creditors, had a right to avoid it, and reclaim the goods specifically. If he had such right, as we presume he had, on proving such fraudulent conveyance, a refusal on the part of the defendant, to deliver them, when demanded, would amount to a conversion, on which this action of trover would lie. Then the question is,

whether the plaintiff has waived his right so to avoid the sale, reclaim the goods, and maintain an action of trover, on the refusal of the defendant to deliver them, by the fact, that before he commenced this action he commenced an action against the defendant, on the notes given for the goods, made the usual affidavit that the notes were due, and caused property to be attached to secure the payment of them. The action on the notes was commenced February 3d 1841, but was never entered. The present action was commenced March 28th 1841. Upon this case the jury were instructed, that if the plaintiff, at the time he sued the notes, knew all the facts — as he did afterwards, when he commenced this action of trover — tending to show that the sale was fraudulent and void, it was to be considered in law as a ratification of the sale, and that in such case this action could not be maintained. The cause went to the jury under this instruction, and they returned a verdict for the defendant.

In order to test the correctness of this direction, it is necessary to consider what the rights of the plaintiff were, when he thus became the assignee of these insolvent debtors. We assume, for the purpose of this inquiry, that he had the right, in behalf of creditors, to set aside this conveyance, if in fact it was made to defraud creditors. But such a conveyance is not *ipso facto* void ; it is valid as between the parties ; it is binding upon the purchaser, and he could not avoid the payment of his notes on that account. It can be avoided only by the creditors, or one representing creditors. But circumstances may be such, that it may not be for his interest to avoid such sale, but on the contrary to affirm it. Suppose the fraudulent character of the transaction consisted in this, that the debtor intended to sell his goods, and the purchaser to buy them for the express purpose of preventing an immediate attachment, by substituting for goods open to attachment, promissory notes not capable of attachment. Should these notes afterwards come into the hands of an assignee, it might be more beneficial for the creditors, to collect the notes, which would affirm the sale, than to disaffirm the sale and repudiate the notes. The assignee has an *election*, not of

remedies merely, but of rights. But an assertion of one is necessarily a renunciation of the other. This results from the plain and very obvious consideration, that the assignee cannot affirm the sale in part, and disaffirm it in part ; if it is to stand as a valid sale, the property of the goods remains vested in the purchaser, and he remains liable for the price. But if the sale is avoided and set aside, it stands as if it had never been made ; the property may be taken possession of by the representative of the creditors, as if no sale had been made, and the purchaser ceases to be liable for the price. When therefore the assignee has made that election, if he receives or demands the price, it is equivalent to an express declaration that he does not impeach the sale, and has no claim to the goods. But if he takes possession of the goods, or demands them of the purchaser, on the ground that the sale was void as to creditors, it is equivalent to a renunciation of all claim for the price.

We are then brought to the question, what act on the part of the assignee is to be taken as proof of his election. It would, we think, be going too far to say, that merely demand of the price should be deemed a waiver of his right to avoid the sale, and claim the goods ; because, in many cases, if the price could be obtained, it would be equally beneficial to the creditors, and he would have no farther occasion to pursue the harsher remedy of impeaching the sale. But we think that if the assignee commences an action against the purchaser for the price, and causes his property to be attached to secure it, this is a significant act, an unequivocal assertion that he does not impeach the sale, but by necessary implication affirms it. It is an act too, deeply affecting the rights of the purchaser, whilst it is an assertion of his own ; and if done with a knowledge of all the facts, which ought to influence him in his election, it is conclusive.

But this determination will not extend to a case where facts subsequently come to the knowledge of the assignee, which, if he had known them before, would have led him to a different election — whether these facts relate to the character of the sale, and bear upon the question whether it was fraudulent or not, or whether they relate to the remedy. As if the assignee.

on commencing his action for the price, believes that he has secured the amount due, by a valid attachment of the defendant's property, and afterwards discovers that it is not the property of the defendant, and that his supposed remedy has failed. Or if he should discover that the defendant had an offset, which would be good against an action of assumpsit for the price, but not good against an action of trover. If, on any of these grounds, it should appear that he had made his election under a mistake of facts, and more especially if he had been led into such mistake by the adverse party, it might present the question in a different view. But no mistake of fact of any kind was suggested in the present case, nor precluded by the directions of the judge.

The case where a party is not barred, by a judgment of nonsuit, from having a new action, is where he has either mistaken his remedy, and brought an action which he could not maintain ; or where he has two collateral, independent remedies, in which an assertion of one is not repugnant to the existence of the other. Of the former class is that of *Nightingal* v. *Devisme*, 5 Bur. 2589, cited in the argument. The assignees of a bankrupt brought an action for money had and received, to recover the value of East India stock, claimed to be the property of the bankrupt, and misapplied by the defendant after an act of bankruptcy. The court decided that the action would not lie, but intimated that perhaps another action might be brought, which would meet the case. Here was no case for an election of remedies, where the adoption of one would exclude the other It was simply a mistake of his remedy by the plaintiff.

Of a similar character is the case of *Peters* v. *Ballistier*, 3 Pick. 495, which at first view seemed like the present. The plaintiffs first brought an action of assumpsit, which they discontinued, and afterwards brought trover, which they maintained. But the decision proceeded on the ground that the plaintiffs had, in the first instance, misconceived their remedy and could not maintain an action of assumpsit ; that they had no election to make, and could only recover against those defendants in an action of trover, relying on their legal title to the property, and a conversion by the defendants. In case where there are two

Butler *v.* Hildreth.

independent and collateral remedies, not inconsistent with each other, a party is not barred, by discontinuing one, from commencing a new action on the other. A man may have trespass or replevin for the same goods; but the one right is not repugnant to the other. We do not see why he might not discontinue one and commence the other, at any time before he has proceeded to judgment.

It was insisted, on the part of the plaintiff, that the defendant relies upon matter in nature of an estoppel, and that a party can only be estopped by his own act, or the act of one with whom he is privy. In this case, the act, relied upon by the defendant to bar the plaintiff, is his own act in bringing a prior action on the notes. But we presume the argument is this; that as the transaction to be drawn in question in this case, touching the validity of the sale, was between the insolvents and the defendant, it was not a transaction to which the plaintiff was party, and therefore he ought not to be presumed to be conversant with all the facts respecting it, as if they had passed under his own observation. This is very true; but this consideration is fully embraced in the instruction which was given to the jury. It was only in case the plaintiff, when he commenced the first action, knew all the facts touching that transaction, which he knew when he commenced the second, that he was to be barred. His not being personally conversant with the transactions only rendered it less probable that he was acquainted with them; but if he was in fact acquainted with them, whether he acquired his knowledge from personal observation or from information would make no difference. On the whole, the court are of opinion, that the direction of the judge was right, and that the defendant is entitled to

*Judgment on the verdict.*