James W. McLean v. C. A. Ficke, *et al.*, Appellants, and George S. Beach v. C. A. Ficke, *et al.*, Appellants.

**Principal and Agent: RELATION ESTABLISHED.** A lender chose a person to submit loan applications. He furnished blanks, and the course of dealing was to submit the applications, and if satisfactory, the person got and forwarded the borrower's note and mortgage. The lender would record the mortgage, send the money to said person, directing him to close the loan, pay off prior liens, and pay the surplus to the borrower. A loan was applied for; said appointee was dealt with substantially as above. Instead of paying off prior incumbrances, he embezzled the money sent him. *Held*, the lender is responsible to the borrower, though the loan application stated that said person was the agent of the borrower.

**Election.** Where a borrower, who has sustained loss through the embezzlement of funds paid by the lender to the lender's agent, attaches the property of the agent, alleging that the money embezzled was received for plaintiff's use and benefit, he waives the right to recover of the lender.

**Practice on Appeal.** While the opinion of the district judge is not part of the record on appeal, it is sufficiently a convenience in its determination, not to be stricken out on motion.

*Appeal from Taylor District Court.*—Hon. H. M. Towner, Judge.

Friday, April 5, 1895.

Actions in equity. Decrees for plaintiffs. Defendants appeal.

*G. B. Haddock* and *Bills & Hass* for appellants.

*A. J. Johnson, T. L. Maxwell,* and *G. L. Finn* for appellees.

Kinne, J.—I. These cases were tried below together, and are so submitted in this court. They will

therefore be disposed of in one opinion. The facts as disclosed in the pleadings and evidence are: That in 1888 appellant Ficke resided in Davenport, Iowa, and was engaged in the business of making farm loans in this state. In April, 1888, and for some time prior thereto, one W. L. Coleman was engaged in business at Lenox, Iowa, as a real-estate, loan, and insurance agent. April 22, 1888, said Ficke and his partner wrote said Coleman: "Messrs. Long and Jones informed us that you would like to act as our agent in the territory surrounding Lenox. As they highly recommend you as a person of integrity, we take pleasure in sending you some blank applications. * * * Trusting that you will be able to send us some good applications, we remain, yours, truly." Afterward, and prior to January 1, 1892, Ficke made a good many loans in the vicinity of Lenox on applications procured and forwarded by said Coleman. During this time Coleman collected and forwarded interest on loans made by Ficke, though we think it appears that such acts were done at the instance of, and for the accommodation of, the parties who had borrowed money, and not at the instigation of Ficke. In May, 1890, Ficke wrote Coleman thus: "Referring to your letter of recent date, in which you say you can get money at seven per cent. straight, I will say that this is a little lower than I am making my agents in general; yet I like your locality, and until further ordered I will fill your applications at that rate." It appears that the method of doing business between Coleman and Ficke was as follows: Coleman procured from borrowers the written application prepared for that purpose by Ficke, and abstract of title, and an appraisement of the value of the real estate offered as security. These he forwarded to Ficke, who passed upon the papers, and accepted or

rejected the loan. If accepted, he prepared and forwarded to Coleman notes for the principal sum and interest, and a mortgage on the land described in the application, and forwarded these papers to Coleman for the borrower to execute. Coleman would then record the mortgage, and forward the executed papers to Ficke, who then sent Coleman a draft for the proceeds of the loan, with a letter relating to the disposition to be made of the funds. The money was then paid out as directed, and incumbrances prior to Ficke's mortgage discharged and released, which was shown upon the abstract, and the latter was then sent to Ficke. Ficke would not make a loan unless the title was perfect, and would only loan on first mortgage. Plaintiffs in these cases were each the owners of farms in Taylor county, Iowa. On plaintiff McLean's land there was a mortgage of seven hundred dollars, payable to the Lombard Investment Company, and due February 1, 1892. On plaintiff Beach's land there was a mortgage of one thousand two hundred and fifty dollars, payable to the same company at the same time. Coleman, who lived at Lenox, near plaintiff's land, had negotiated these loans through the Lombard Investment Company. Prior to the maturity of the mortgages mentioned above, plaintiffs went to said Coleman, desiring to obtain a renewal or extension of their mortgages. Coleman told plaintiffs that he could secure better terms by obtaining new loans of defendant C. A. Ficke. In accordance therewith, plaintiffs signed writtten applications to Ficke, McLean applying for eight hundred dollars, or one hundred dollars more than enough to pay his Lombard mortgage, and Beach applying for one thousand two hundred and fifty dollars, the exact amount of his maturing mortgage to the Lombard Company. Both applications were accepted and approved by defendant Ficke, who sent

Coleman a draft for eight hundred dollars on the McLean application, who deposited it to his personal credit in the Lenox Bank January 26, 1892; and the Beach draft was likewise received and deposited January 30, 1892. This money was checked out by said Coleman on his personal checks, and Coleman, about February 23, 1892, absconded. Coleman embezzled or otherwise misappropriated the funds thus received. The Lombard mortgages were neither of them paid. Coleman paid McLean nearly or quite the excess above his Lombard mortgage, or about one hundred dollars; but neither of plaintiffs received any part of the money that was procured to remove the Lombard mortgages. January 14, 1892, plaintiff McLean executed his note and mortgage to defendant Ficke, who recorded it January 24, 1892, and on February 13, 1892, defendant Ficke assigned it for value to defendant C. W. Schaefer. January 26, 1892, plaintiff Beach executed his note and mortgage to defendant Ficke, who recorded it January 26, 1892, and on February 6, 1892, defendant Ficke assigned it to defendant August Miller. Plaintiffs thereafter bring these actions to cancel said notes and mortgages, or for judgment against defendant Ficke. Plaintiffs claim that Coleman was the agent of Ficke, and that the latter is liable to them for the money which Coleman failed to pay over. Ficke contends that Coleman was the agent of plaintiffs; that as the application for the loans contained the following: "Whom do you appoint as your agent, authorized to negotiate the loan, and receipt for the money?" which was answered, "W. L. Coleman,"—the plaintiffs thereby constituted Coleman their agent, and payment to him was a satisfaction of Ficke's liability. In a reply, plaintiffs plead that the clause above referred to was a fraud, in effect, on plaintiffs, and designed to relieve Ficke from responsibility; that Beach had no

knowledge of such clause, and did not so answer; and that it was not the purpose that the money for removing prior incumbrances should be paid plaintiffs, but that duty was assumed by Ficke, who directed Coleman so to do. Of the Beach loan, Ficke wrote Coleman· "Inclosed find draft for one thousand two hundred and fifty dollars, with which to close the Beach loan. I also return the abstract for release of No. 10."

February 26, and after Coleman left, Beach telegraphed Ficke to stop payment on the two drafts, and the same day Beach brought an action at law against said Coleman in the district court of Taylor county, Iowa, alleging in his petition that on February 10, 1892, the defendant Coleman had received to the use of said Beach one thousand two hundred and fifty dollars, and had converted the same to his own use, and no part of it had been paid. He asked and procured a writ of attachment, which was levied upon certain real and personal property of Coleman, which said property it appears was held by the sheriff, except what had been sold, at the time these cases were tried in the lower court. It should be said that both plaintiffs paid Coleman a commission for procuring the loans. Ficke paid him nothing. The district court entered a decree for the plaintiff in each case, and defendants appeal.

II. As to McLean's case: There is but one question presented in this case, and that is as to whether in receiving the money from Ficke, which was to be used to discharge the mortgage of the Lombard Investment Company, Coleman was acting as McLean's agent or as Ficke's agent. Without entering upon a discussion of the question of the right of one party to act by agreement as the agent of two parties having adverse interests, it may be conceded that such a relation may in a proper case exist, and we may

further concede that as to some of the matters connected with the procuring of this loan Coleman did act as McLean's agent. We think, however, that in receiving the money from Ficke for the purpose of closing the McLean loan, and discharging the prior incumbrance, Coleman was not acting as agent for both McLean and Ficke, nor was he acting as the agent of McLean. If Coleman was intrusted with this money as the agent of McLean, it is clear that the latter has no standing in court, and must bear the loss incident to Coleman's conversion of it. If, however, Coleman received this money as Ficke's agent, then Ficke must respond in this action. Defendant's contention that Coleman, in receiving the money, acted as McLean's agent, is largely grounded upon the claim that McLean in the application appointed Coleman his agent for the purpose of receiving the money, and that in the same instrument McLean had agreed to pay off the prior mortgage. As to McLean's agreement to pay off the prior mortgage, it is clear from all of the facts and circumstances that that amounted to no more than a consent on McLean's part that so much of the money loaned as was needed for that purpose should be applied in satisfaction of the existing incumbrance upon his land. We do not deem that statement in the application as of controlling importance in determining the main question as to whether or not, in receiving the money, Coleman was acting for McLean. If, however, we are concluded by the statement in the application, wherein it is stated that McLean appointed Coleman as his agent to receive the money, then plaintiff cannot recover. We think it is clear that in determining this question of agency we are not absolutely bound by this statement. We have no doubt that in any case of contract between parties it is not only within the province of the court, but clearly its duty, to go behind the technical wording of the

instrument, and from the entire evidence in the case
determine, as a matter of fact and law, the question
of the agency. Can the parties to a contract irrevo-
cably fix the status of a third party in his relation to
them by denominating him an agent for one of them, if
the facts and circumstances disclosed in the record
unmistakably show that such named relation was a fic-
tion,—was untrue in fact? If they can, then courts
are powerless to determine and give effect to the actual
contracts of parties, and in effect the courts would be
bound by a mere form, while the substance, the realty,
would be subordinated to that which was in fact unreal
and untrue. The mere use of the word "agent," as thus
applied by parties in their contract, cannot be held to
have the effect to make one an agent who, in view of
the law, under the evidence, is not such. A legal rela-
tion of one to another is not the fruit of a name, but is
to be determined from all of the evidence in the case.
Merely calling one an agent for one party, even in a con-
tract, does not of necessity make him such. The ques-
tion is, in view of all the facts disclosed in the record,
what relation, under the law, did Coleman sustain to
these parties? Parties may in a contract solemnly
declare that the doing of certain acts therein provided
shall be deemed conditions precedent, but that does not
preclude the courts from determining whether in fact
they are such conditions. *Jones v. Association,* 92
Iowa, 652. If the facts show that the declaration of
agency in the application was put there to aid the
lender in escaping a legal liability, and the acts of the
parties show that in receiving Ficke's money Coleman
did in fact act as Ficke's agent, the nominal statement
cannot be held to control the real facts, which are
inconsistent therewith. As is well said in *Insurance
Co. v. Ives,* 56 Ill. 402: "There is no magic power resid-
ing in the words of the stipulation to transmute the real

into the unreal. A device of mere words cannot, in a case like this, be imposed upon the view of a court of justice in place of an actuality of fact, and make the company and its agents the agents of the appellee, and their doings the doings of appellee." This is as applicable to the case at bar as to an insurance case. Without further extending this discussion of the power of the court to look behind the mere words used and ascertain the facts, the right so to do has frequently been upheld. *South Bend Toy Manuf'g Co. v. Dakota Fire & Marine Ins. Co.* (S. D.) 48 N. W. Rep. 310; *Larson v. Investment Co.* (Minn.) 53 N. W. Rep. 179; *Jensen v. Investment Co.* (Neb.) 58 N. W. Rep. 100; *Banks v. Flint,* 54 Ark. 40, 14 S. W. Rep. 769, and 16 S. W. Rep. 477. And see *Jamison v. Insurance Co.,* 85 Iowa, 229.

Ficke insists that Coleman was not his agent touching this loan, as well as many others referred to in this record. It is clear, however, that his evidence upon that point is simply a conclusion, not founded upon the facts appearing in the case. All of the facts tend to show that Coleman, as to the receipt of this money and the payment of the Lombard mortgage, was acting in behalf of Ficke. Ficke had appointed him his agent years before. He looked to Coleman for information as to McLean's character and responsibility, and as to the character of the loan; depended upon him to see to it that his mortgage was made a first lien by the payment and discharge of the prior mortgage. This was not only the fact in McLean's case but in the case of every loan he made through Coleman. Indeed, Ficke, as a good business man, could not do otherwise than to depend upon Coleman as to these matters. Ficke did not close the loan himself. He lived at a distance from the borrowers; he had no personal acquaintance with either McLean or his land which he proposed to give as security for the money borrowed. Coleman, as appears,

was his exclusive representative in and about Lenox Ficke wrote Coleman: "I have yours of the 21st inst., with note, McLean, and abstract. I send you herewith a draft for eight hundred dollars, with which to *close the loan*, and also return abstract for completion. Of course, mortgage to Lombard Investment Co. is to be paid off with this money." No intimation in this that the money should be paid to McLean. But here was a duty enjoined upon some one to "close the loan" and pay off that mortgage. The letter is just such a one as a principal loaning money would write to his agent. If Coleman was not Ficke's agent to receive and disburse this money, then he had no one to act for him. True it is, Ficke testifies that when he sent the draft that ended his connection with the matter, and that then the loan was closed, so far as he was concerned. But, in the light of his other testimony, it is certain that he was mistaken, for he afterward testifies that he required that his mortgage should be a first lien upon the land. Now, who, if not Coleman, was to discharge this duty for Ficke? Ficke conveys the impression that he was quite willing to intrust his money to McLean, or, what would be the same, to Coleman, as McLean's agent, and run the chances of his loan being properly closed. Business men do not so act. Ficke surely would not trust McLean, an entire stranger, with the proceeds of the loan, and leave him to see that the prior mortgage was discharged. It was but natural, however, for him to do as he did—intrust his business to Coleman, whom he had long before appointed agent, having faith in his integrity. It is said that Ficke was not interested in having the prior lien discharged, the claim being that the land was worth more than the sum of both mortgages. The claim is not tenable. Ficke required a first lien in all cases, and his letter of instructions, heretofore set out, shows that he was insisting upon that in

McLean's case. In view of these and many other facts appearing in the record, we are satisfied that Ficke sent the money to Coleman as his agent, and that the latter was charged with the duty, on Ficke's behalf, of paying and satisfying the Lombard mortgage. His agent having failed to perform said duty, and having converted the money, Ficke is responsible. We have not referred to the many cases cited by counsel, though we have carefully examined them. The question is one which must be determined upon the facts of each case. The following cases, in addition to those heretofore cited, in principle support our conclusion: *Figley v. Bradshaw* (Neb.) 53 N. W. Rep. 148; *Insurance Co. v. Jones* (Col. Sup.) 27 Pac. Rep. 807; *Sullivan v. Insurance Co.* (Kan.) 8 Pac. Rep. 116; *Sheehy v. Shinn* (Cal.) 37 Pac. Rep. 393.

III. As to Beach's case: Ficke, in an amendment to his answer, pleads that after he had paid the money to Coleman, in accordance with the terms of Beach's application, that Beach, with knowledge that the money had been so paid, brought an action against Coleman in the district court of Taylor county to recover said sum, one thousand two hundred and fifty dollars, and alleged in his petition, which he verified, that Coleman had received said money to the use of Beach. In said action Beach sued out a writ of attachment, and levied upon Coleman's property, both real and personal, and said action is still pending, and said property still held under said writ. And Ficke claims that Beach by such acts elected to, and did, ratify Ficke's act in paying said money to Coleman, and cannot now be heard to dispute the same. Beach, replying, denies an election on his part to treat or accept Coleman as his sole debtor, and denies his agency for him; denies, also, that he had knowledge of the facts at the time he brought the attachment suit. Nothing is

clearer than that Beach might, if he so elected, treat
the payment to Coleman as being a payment to himself,
through his agent, Coleman. That is to say, Beach
might treat the payment to Coleman as having been
properly made to him, as his (Beach's) agent, regardless
of the fact as to whether, in the absence of such elec-
tion, Coleman would have been his agent. Now the
question is, did Beach by his acts elect to treat the
payment made to Coleman as a payment to himself?
Did he treat the money in Coleman's hands as his
(Beach's) money? If he did so, with a full knowledge
of all the facts which could in any way affect his action,
he should be held concluded by his election. To deter-
mine whether Beach is bound by his election, we must
see if he had knowledge of the facts when he brought
the suit. He says he did not then know that the appli-
cation in terms made Coleman his agent. As to this he
is contradicted by a credible and disinterested witness.
If it be conceded, however, that he was ignorant of that
fact, he certainly could not have relied upon it as a rea-
son for treating Coleman as his debtor. There is, then,
nothing in his ignorance of that fact which could have
affected him in electing to sue Coleman. He says he
understood that Ficke was to pay off the Lombard
mortgage; that he did not expect any of the money him-
self; that he never inquired for the money. It does not
appear that, prior to the time Coleman left Beach knew
that Coleman had the money in his possession. The
next day after Coleman left, Beach was advised of that
fact, and began his suit attaching Coleman's property.
Now, as it appears to us, the fact which was unknown
to Beach when he brought the suit was the fact which,
if known to him, might have induced the action he took;
but it cannot be claimed that when he sued Coleman, if
he had known that he, Beach, had in the application
appointed Coleman as his agent, that fact would in any

wise have deterred him from so doing. He knew every other fact connected with the transaction when he instituted his suit. He must then be held to have acted with knowledge of the facts. Reliance seems to be placed upon Code, section 2550, in support of the claim that Beach's election to sue Coleman did not prevent him from also suing Ficke. A reading of that section is sufficient to show that it has no application to a case like this. It must be borne in mind that this is not a case of one who, having a cause of action against another, pursues the wrong proceedings, or brings the wrong action. In the latter case he would not be concluded, but might dismiss and institute a proper form of action. Now, it is certain that Beach could not treat the money paid Coleman as his (Beach's) money, as he did by instituting the suit, and at the same time successfully claim that the money paid Coleman belonged to Ficke. The two claims are not at all consistent. It is not a case of concurrent remedies. It is a case of an election of remedies, and the rule is well settled in such cases that a party will not be permitted to make inconsistent claims. So it is clear that one may ratify the payment of money improperly made to another. As is said in *Homire v. Rodgers*, 74 Iowa, 395: "But he did ratify it by bringing this action against defendant for the recovery of the amount. He thereby recognized the payment as having been made in discharge of the liability of the owners of the cattle to him; and their obligations arising under the contract must now be regarded as fully satisfied." We do not see why the rule applied in the above case should not control in Beach's case. In *Klocow v. Patten*, 93 Iowa, 432, it is said: "But the bringing of this action to recover as for property sold and delivered must be regarded as an election to affirm the act of the defendant in selling the property and appropriating the proceeds as his own. The plaintiff

cannot be permitted to treat the property in his transaction with the defendant as sold, and to treat it as not sold in his dealings with the garnishee." See also, *Lawrence v. McKenzie*, 88 Iowa, 432; *Bank v. Dows*, 68 Iowa, 460. See, also, as to effect of election, *Schneitman v. Noble*, 75 Iowa, 124; *Fowler v. Bank*, 113 N. Y. 450, 21 N. E. Rep. 172; *Butler v. Hildreth*, 46 Mass. 49. Now, Beach had two courses open to him. He might ratify the payment to Coleman, and sue him, as he did, or he might rely upon recovery from Ficke on the theory that Coleman was Ficke's agent. When he elected to sue Coleman, and swore that it was his money which Coleman had converted, he ratified the payment to Coleman as due to himself, and thereby said, as solemnly as he could, that Ficke had discharged his obligation by the payment to Coleman for Beach. We are unable to discover any reason why Beach should not be concluded by his election. We therefore hold that the decree in the court below in his favor and against Ficke was erroneous. In all other respects the decree was proper.

IV. Appellants move to strike from the record the amended abstract of appellees. This abstract is made up entirely of the opinion filed in the district court by the learned trial judge. While it is true that such opinions are not an essential part of the record, still they are often very helpful to this court in giving a clear understanding of the reasons upon which the judgment of the trial court is based. The opinion in controversy shows that the trial judge gave the case careful consideration. The motion is overruled.

The decree of the district court will be reversed in Beach's case, and in other respects affirmed. Decree below in McLean's case *affirmed;* in Beach's case, *reversed.*