Annie B. Youtsey, Administratrix, Appellant, v. Union Central Life Insurance Company et al., Appellees.

**PRINCIPAL AND AGENT:** Agent of Borrower(?) or Lender(?) A borrower who, in writing, designates a named person as his agent to receive the amount of the loan, with intent that he should, in fact, be such agent, must bear the loss consequent on the embezzlement of the money by such designated agent.

*Appeal from Lucas District Court.*—D. M. Anderson, Judge.

JUNE 25, 1921.

ACTION in equity, to cancel certain notes and a real estate mortgage securing same, executed by the plaintiff to defendant insurance company, and assigned to Van Evera & Company. The loan of $2,500 upon its receipt by one Wilson, alleged to be the agent of the defendants, was converted by the said agent to his own use. Upon the finding that Wilson was the agent of plaintiff, the petition was dismissed at plaintiff's costs. Plaintiff appeals.—*Affirmed.*

*J. A. Penick* and *W. W. Bulman,* for appellant.

*Parsons & Mills* and *C. F. Wennerstrum,* for appellees.

DE GRAFF, J.—Plaintiff, through one Fred N. Wilson, in the latter part of 1917, entered into negotiations with the Van Evera Company, to procure certain loans from the defendant Union Central Life Insurance Company. The purpose of securing these loans was to pay off certain outstanding mortgages upon plaintiff's land. Evidence was offered that three applications were made to the defendant insurance company for loans in the sums of $10,500, $4,000, and $2,500, respectively, on three different tracts of land. The first and third applications were allowed, and the second was allowed in the sum of $3,500. The first and second loans were fully consummated, and notes and mortgages were executed.

This appeal concerns itself with the loan of $2,500. These loans were made upon an amortization plan, which permitted the repayment of principal and interest in 20 annual payments, and each payment was evidenced by a note. The instant application, when signed and filed, contained this statement:

"32. Agency:  I hereby appoint and constitute Fred N. Wilson of Chariton, Iowa, my agent or attorney in fact to negotiate and procure the loan hereby applied for, authorizing him, or the Union Central Life Insurance Company, of Cincinnati, O., to pay off all liens on said land and to send money or drafts therefor at my risk, and I hereby ratify and confirm all that my said agent or attorney may do in the premises."

The method or system used by the insurance company in

making loans is as follows:  Application is first filed on the company's form by the borrower; the land is then examined through an agent of the company, for the purpose of determining whether the security is sufficient; the agent or examiner then makes his report, which is sent to the Van Evera Company; the application is then presented to the insurance company with the recommendation of the Van Evera Company; the insurance company then approves or disapproves the application for loan; and if approved, the Van Evera Company prepares the mortgages, notes, and orders, and transmits them for signature.  After the mortgage is signed and acknowledged, it is filed for record.  Subsequently, all papers are returned to the Van Evera Company.  The abstract of title is then examined and continued, if necessary, and if found satisfactory, the money is sent by draft to the borrower, conditioned upon the payment of all existing and outstanding liens, so that the insurance company will have the first lien of record.  These steps were taken in the instant case, and, at the time that the mortgage and notes were signed by the plaintiff, an order was signed and sent to the Van Evera Company, in words and figures as follows:

"January 12, 1918.

"George M. Van Evera & Company

"Des Moines, Iowa.

"You are hereby authorized to apply the proceeds of my mortgage notes to the Union Central Life Insurance Company, of Cincinnati, Ohio, dated January 12, 1918, principal amount $2,500, this day executed, towards payment of all existing liens upon the lands mortgaged to that company, including all mortgages, judgments, taxes and liens of every kind affecting the land, payment of which is necessary to make the mortgage to the said insurance company a first lien upon the land so mortgaged, and to pay any balance thereafter to the order of Fred N. Wilson, Chariton, Iowa, who is hereby expressly constituted to receive the same.

[Signed]    "Frank Youtsey,
            "Annie B. Youtsey."

The mortgages and notes in question were signed by the plaintiffs on January 12, 1918, and the abstract was sent forward

for completion at that time. There was an existing mortgage upon the land; but, before the loan was consummated, plaintiffs paid off this mortgage with other money, and discharged the lien. When the $2,500 loan was advanced, a short time thereafter, there were no liens upon the farm; and, in accordance with the terms of the signed order quoted above, the money was paid to Fred N. Wilson. It appears that he converted it to his own use, and thereby deprived the plaintiff of the loan. The embezzlement is the provoking cause of this suit. Plaintiff now asks relief, and prays that the notes and mortgage and the lien created thereby on the land by the filing of said mortgage be canceled and discharged.

The initial sentence in the argument of appellee is: "This case is peculiar, and presents no question of law and no question of fact." If this is true, it is a rare case; but, as appellee has failed to sustain this proposition, we reply, in the language of the common law: "*Causam nobis significes* (that you indicate to us the reason)."

There is presented a mixed question of law and fact, to wit: Whose agent was Wilson? If Wilson was intrusted with the $2,500 as the agent of the Youtseys, it is clear, on principle, that the plaintiff has no standing in court, and must suffer the loss incident to Wilson's embezzlement. If, however, Wilson received this money as the agent of the Van Evera Company, then the latter must bear the loss, and the plaintiff is entitled to have the notes and mortgage canceled, as without consideration.

The record discloses that, when the draft went forward to Wilson, there were no liens upon the land securing this loan; and the money, therefore, under the express terms of the signed order of plaintiff, properly came into the hands of Wilson, who, under the specific language of said order, was entitled to receive and receipt for the proceeds on behalf of plaintiff.

At the beginning of the negotiations for this loan, Wilson was apparently a common agent, and he could legally act as agent for both parties, provided there was no conflict in their interests. Plaintiff recognized Wilson as her agent, in the application signed by her for the loan in question. This would not, in itself, fix the status of Wilson as the agent of one party only. Calling a person an agent does not, by the mere use of the word, make

such person an agent. Agency is a contractual relation, and is not created by an act of christening. A legal status does not arise from the use of a name, but is determined from all the evidence in a case. Courts must give effect to the actual contract of parties, and will look behind the mere words used, to ascertain the facts and the real intent. The facts in the instant case tend to show that Wilson, in receiving the money, was the agent of the plaintiff, and was acting in her behalf.

Appellant relies upon the case of *McLean v. Ficke,* 94 Iowa 283, and earnestly argues that it controls the case at bar. The *McLean* case is similar in several respects, but is clearly distinguishable in the last analysis. In the *McLean* case, the agent Coleman had been the agent of the defendant Ficke, and had been appointed by the latter as his agent, a number of years before the transaction in suit. The loan had been made through Coleman, as the agent of the defendant, and the latter relied upon the representations and rcommendations of Coleman in making the loan. Coleman was specifically authorized by the lender Ficke, "to close the loan and to return abstract for completion." Coleman was also the duly constituted agent of Ficke to pay off a prior mortgage, and the money was sent to Coleman with directions from Ficke to pay off the mortgage. In brief, the money was sent by Ficke to the agent, Coleman, not to pay over the draft or the proceeds thereof to the borrower, but to discharge the lien of a former mortgage. In doing these things, Coleman embezzled the funds; but he was acting as the agent of the lender, and not for the borrower, and therefore he converted to his own use the money of the lender, and not that of the borrower. It will also be observed that, in the *McLean* case, no signed order or written direction was given by the borrower to the lender as to the disposition of the loan.

The instant case being ruled by the facts, we cannot escape the conclusion that Wilson was the agent of the plaintiff in the concluding chapter of the history of this loan transaction. This was the view of the trial court, and with the finding we are not inclined to interfere.

Wherefore, the judgment and decree entered are—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.