### METROPOLITAN LIFE INS. CO. v. PETERSON et ux.

(Circuit Court of Appeals, Eighth Circuit. February 28, 1927.)

No. 7482.

Mortgages ⊚⇒25(5)—Mortgagor held entitled to cancellation of nonnegotiable note and mortgage in excess of sum received as against purchaser.

Defendant, which purchased from a trust company a nonnegotiable note secured by mortgage, *held* to acquire no greater rights against the maker than the trust company had, and where the latter had intrusted an agent with disbursement of the proceeds of the loan in payment of the cost of a building on the mortgaged property, to keep it free from prior builders' liens, but only a part was so used, the remainder being retained by the agent, the maker *held* entitled to cancellation of the note and mortgage on repayment of the amount received.

Appeal from the District Court of the United States for the Southern District of Iowa; George C. Scott, Judge.

Suit in equity by John L. Peterson and wife against the Metropolitan Life Insurance Company. Decree for complainants, and defendant appeals. Affirmed.

For opinion below, see 19 F.(2d) 74.

Edgar M. Morsman, Jr., of Omaha, Neb. (Tinley, Mitchell, Ross & Mitchell, of Council Bluffs, Iowa, and Morsman, Maxwell &

Haggart, of Omaha, Neb., on the brief), for appellant.

Clem F. Kimball and Raymond A. Smith, both of Council Bluffs, Iowa (Kimball, Peterson, Smith & Peterson, of Council Bluffs, Iowa, on the brief), for appellees.

Before LEWIS and KENYON, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. This action was first instituted in a court of the state of Iowa by the appellees, John L. Peterson and his wife, against the appellant, later referred to as the insurance company, the United States Trust Company, of Omaha, Neb., and the Robert B. Wallace Company, which last named was shortly thereafter adjudicated a bankrupt, Frank H. Binder elected trustee of the estate, and by supplemental amendment to the complaint made a party defendant. Upon petition of the insurance company, the cause as to it was removed to the court below, upon the ground of separable controversy; the cause against its codefendants being retained in the state district court.

The complaint charges that on April 27, 1923, plaintiffs herein negotiated with the defendant Robert B. Wallace Company for the purpose of securing a loan of $4,500 upon certain realty situated in the city of Council Bluffs, Iowa; that they executed a note to the Robert B. Wallace Company for said sum of $4,500, and to secure the same executed a mortgage on the premises in controversy, which mortgage was duly filed for record and recorded in the proper office of the register of deeds of the county in which the realty was situated; that the note and mortgage were executed as part of the same transaction, and that they are nonnegotiable; that they are informed that the same are now in the possession of the defendant Metropolitan Life Insurance Company; that plaintiffs have only received a part of the consideration for said note and mortgage in the amount of $1,941.-43; and that they have not received the balance of said note, amounting to $2,587.57. They offered to repay and tendered into court the amount paid to them as aforesaid, and alleged that they are willing to pay any interest that may be due thereon, and tender the same into the court. The prayer of the complaint is that the defendants be required to surrender up to the court for cancellation the promissory note, and that the mortgage be canceled upon repayment of the amount actually received.

The answer of the life insurance company, which also contains a counterclaim, denies that the note and mortgage were nonnegotiable; that it has no knowledge of what sums were paid to the plaintiffs by the Wallace Company, and that, after the execution of the note and mortgage to said Wallace Company, the Wallace Company indorsed the same and delivered it to the United States Trust Company, of Omaha, Neb., one of the defendants herein, together with an assignment of the mortgage securing the said promissory note; that thereafter the said trust company indorsed said promissory note and sold the same to the defendant, and delivered to this defendant an assignment of the mortgage to secure the same, and this defendant purchased said promissory note from said trust company for a valuable consideration, prior to maturity, and became and is now the owner and holder thereof in the ordinary course of business, without knowledge of the claim now made by the plaintiffs that they failed to receive the full consideration for said promissory note. In the counterclaim a foreclosure is asked, as a default had been made in the payment of the interest on the note as it became due on September 1st, 1923, by reason whereof the entire indebtedness became due under the terms of the mortgage. Copies of the note and mortgage are set out as exhibits to the counterclaim.

Plaintiffs filed a reply to the counterclaim, in which they again alleged that the note and mortgage are nonnegotiable, and that they have only received a part of the consideration as set out in the original complaint. It denies that the insurance company is a bona fide purchaser of said note and mortgage, without knowledge of the claim, made by plaintiffs, that they have failed to receive the entire consideration for the said promissory note and mortgage. They deny that the Wallace Company was their agent to negotiate the note and mortgage and receiving the proceeds thereof, and in performing any act or acts in connection with said note and mortgage. It then repeats practically the same allegations set out in the original complaint. They also alleged that the Wallace Company was the agent of the defendant life insurance company, or the agent of the defendant trust company, and that the defendants were at all times aware, or had sufficient information or knowledge of the things done by the Wallace Company in connection with obtaining from the plaintiffs of the said note and mortgage to put them on notice.

There was a final hearing, and a decree in

favor of appellees, rendered on the original complaint, as well as on the counterclaim, from which decree this appeal is prosecuted.

On the argument the counsel for the appellant waived the question of the note being a negotiable instrument; so this question need not be considered.

The evidence establishes and the trial court so found:

(1) That neither the Wallace Company, nor the trust company were ever the agents of the insurance company, except for the limited purposes specified in the contract between the United States Trust Company and the insurance company.

(2) That the Wallace Company was the agent of the plaintiffs in negotiating the loan and in the performance of some functions.

(3) That the plaintiffs understood all the time that the Wallace Company was to procure the loan from the trust company, and that the ultimate source of funds was the insurance company. And the court held that the determination of the cause depended on answering the questions, whether the Wallace Company acted as the agent of the plaintiffs throughout, both receiving and distributing the proceeds of the loan as the representative of the plaintiffs, if it did, one need reason no further, for payment to the Wallace Company would be equivalent to payment to the plaintiffs, and they would be entitled to no relief on this record. On the other hand, an affirmative answer to the fifth question (which was) "was the loan negotiated by plaintiffs from the trust company through the Wallace Company, plaintiff's agent, which latter company, however, was under contract with the trust company to act as its agent in the performance of certain functions, viz., among others, to receive and disburse and see to the application of the proceeds of the loans during construction, and until the title to the property was clear of all liens."

The court held that in that event the negotiability of the note is not material. But, as counsel for appellant waived the question of the negotiability of the note, claiming that it is entitled to a decree, although the note is nonnegotiable, which having been admitted, it is unnecessary for us to pass on the question of negotiability or nonnegotiability of the note.

The evidence establishes that the appellant invested some of its capital in purchasing mortgage notes in the states of Nebraska and Iowa, and it selected the United States Trust Company, of Omaha, Neb., as its financial correspondent for those two states, who would submit notes secured by mortgages on realty, and it would then decide whether to purchase them. It required an abstract of title, value of mortgaged premises, and such other information as would satisfy its officers in the home office in New York that the note is amply secured before making the purchase from the trust company.

The Wallace Company was engaged in the loan business in Council Bluffs, Iowa, obtaining loans for its clients. Some of these loans it would secure from the United States Trust Company. Among the notes for which the money was obtained by it from the trust company was the one in controversy in this action. It was executed by the appellees John L. Peterson and wife for $4,500, payable to the Wallace Company, by it indorsed to the trust company, from whom later the insurance company purchased it. The note was secured by a mortgage on a lot in Council Bluffs, Iowa, and the loan was for the purpose of erecting a building thereon. It contained a number of clauses, which it is conceded made it a nonnegotiable note under the Uniform Negotiable Instruments Law of Iowa.

When the note was executed, and when assigned by the Wallace Company, it was agreed between the Wallace Company and the plaintiff that the money should be advanced as the work of the erection of the building progresses and the bills of the contractors were to be paid. On March 23, 1922, the trust company wrote to the insurance company, inquiring whether the insurance company would consider loans upon new residence construction. To this letter the insurance company replied that it would not consider such loans.

On May 17, 1923, the trust company offered to the insurance company this note, among others, amounting in the aggregate to $59,500, with the information that this note is for a house "to be built." The insurance company in its reply to the trust company stated that it would not purchase any notes secured by mortgage, unless the building thereon had been completed, and is free from material exceptions, and the title was absolute in mortgagor, and the security was a first mortgage, and, when it agreed with the trust company to purchase notes from it, it advised it that it would not permit the trust company to have any subagents, saying: "As a matter of fact, such arrangements are entirely between your company and the party you care to appoint to handle the business in the smaller cities."

On June 18, 1923, the trust company again sent a number of notes to the insurance

company, among them the notes in controversy. In the letter advising the trust company of the receipt of these notes, the insurance company wrote to the trust company: "In cases where buildings have not been completed, it is understood that no advance is to be made by the company until the completion of the same. The property must also be free from any possibility of any mechanics' liens, which would take priority to the lien of the mortgage obligations."

On July 3, 1923, the trust company advised the insurance company that the $4,500 of the Peterson note has been disbursed and on July 10, 1923, the insurance company paid the $4,500 to the trust company. The trust company paid the proceeds of the note to the Wallace Company before the insurance company purchased it. It paid on May 11, 1923, $2,250, one-half the loan; on May 21, 1923, $1,125, one-fourth the loan; and on June 16, 1923, the other one-fourth of the loan. The instructions of the trust company to the Wallace Company were not to pay this money to the mortgagors, except as the work on the building progresses, and the balance when the building is completed. In conformity with these instructions the Wallace Company paid to the mortgagors $1,941.43, leaving $2,558.-57 unpaid. The Wallace Company having failed, and the insurance company refusing to advance the balance of the proceeds of the note, the Petersons filed their complaint, setting out that they had received $1,941.43 only, offering to pay that sum, with interest, and upon such payment that the note and mortgage be canceled as a cloud on the title of their premises.

The misrepresentation of the trust company to the insurance company, when it asked for the purchase of this note on July 3, 1923, was not known to the plaintiffs, who only knew that the money, realized from the note, was not to be paid to them, except as the work of construction progressed, in order to enable them to pay the contractors, thereby preventing mechanics' liens to attach to the mortgaged premises. This was the course pursued by the Wallace Company, who paid them at various time sums amounting in the aggregate to $1,941.43, which sum, with interest, the plaintiffs are by the decree required to pay to the insurance company, in order to have the note and mortgage canceled.

When the trust company paid the money on the notes to the Wallace Company, with directions to pay it only as the work on the house progresses, that there may be no mechanics' liens on the mortgaged premises, it made that company its agent, and any loss caused by the acts of the agent would have to be borne by it. This agency was created by the trust company before it sold the note to the insurance company, and, as the note is nonnegotiable, the insurance company acquired no greater rights than the trust company had at the time of the sale of the note, which was that it was only entitled to recover so much of the note as its agent, the Wallace Company, had actually paid to the builders for plaintiffs' benefit.

The plaintiffs are entitled to the relief asked, and the decree is accordingly affirmed.