## AMERICAN MORTGAGE CORPORATION v. SPENCER.

No. 1106.

Court of Civil Appeals of Texas. Waco.

Dec. 10, 1931.

Rehearing Denied Jan. 14, 1932.

S. A. Williams and Wallace, Taylor & Vickrey, all of Dallas, for appellant.

Burgess, Burgess, Chrestman & Brundidge and H. A. Bateman, all of Dallas, for appellee.

GALLAGHER, C. J.

Appellant, American Mortgage Corporation, instituted this suit in the district court of Dallas county against appellee, John T. Spencer, to recover on a promissory note executed by him to Beaumont Finance Company and by said company assigned and transferred without recourse to appellant, and to foreclose a mortgage lien given therein to secure the same on one Packard car. "Beaumont Finance Company" was merely a trade-name under which one E. O. Hinckley transacted business as a loan broker. Some time prior to the execution of the note sued on appellant and said Hinckley entered into a written contract, by the terms of which appellant agreed to purchase from Hinckley promissory notes secured by chattel mortgages on automobiles and other personal property, to the amount of $100,000 per annum, and to purchase such paper originating in the city of Beaumont exclusively from said Hinckley. One of the conditions of said contract was that the notes offered to appellant for purchase by it should be drawn according to the plans, rates, and requirements regularly in use by appellant, and Hinckley agreed to conform to its requirements in the preparation thereof and of all papers submitted in connection therewith. Hinckley also agreed therein to comply with appellant's instructions and directions in the handling of any business arising under such contract, including the disbursement and collection of funds for appellant's account. He further agreed therein that, in event he failed during the period of thirty days to offer acceptable loans to appellant, it should have the right to terminate his contract and be released from further obligation to accept loans from him. He further agreed therein that, if any notes accepted by appellant under such contract should become thirty days past due, it should have the right to cease accepting paper until such notes were paid or the liens securing them foreclosed, but he was in that connection accorded the right to demand from it proper legal papers to en-force such delinquent collection. Hinckley expressly agreed and bound himself therein, subject to a specific limitation as to amount, to pay appellant all losses sustained by it on notes accepted under such contract. It was expressly stated in such contract that Hinckley was not an agent of appellant, but was the agent of the makers of the several notes accepted by it, and that his action in collecting and disbursing funds incident thereto was solely for the convenience and accommodation of such makers. Said contract provided that Hinckley's profit should be a stipulated percentage on the net amount of such respective notes, and that the same should be paid to him by appellant monthly, or in such manner as mutually agreed upon. Hinckley was also required by the terms of said contract to give to appellant a satisfactory bond in the sum of $2,500. He did so. Said bond contained recitals that Hinckley would from time to time have in his possession funds or property of appellant, that he would receive instructions and conditional remittances in connection with the purchase of notes under said contract and other business incident thereto, and that the same was given to secure proper and faithful performance by him of the duties and business therein named and of all others that might from time to time devolve upon him by virtue of his connection with appellant. The condition of said bond was that Hinckley should faithfully comply with all the terms and conditions of such contract and pay over and remit to the proper parties all moneys coming into his possession by reason of his connection with appellant.

Hinckley's contract with appellant was dated March 18, 1929. He continued to operate thereunder until the latter part of October of the same year. During said period he purported to be loaning money furnished by appellant, and he performed various services incidental to the making of such loans, the collection of installments due thereon, and the enforcement of liens given to secure the same. One of such loans was made to appellee's secretary, Hannen. Early in September, 1929, appellee, though apparently a man of considerable means, was in financial straits, and desired to raise money by obtaining a loan secured by a lien on his Packard car. Hannen told him that Hinckley represented a Dallas finance company that would make a loan on his car. He went with him to Hinckley's office, introduced him to Hinckley, and left. Hinckley stated to him that he represented appellant and that appellant would have to approve the loan and remit the money to him before he consummated the same. Hinckley examined the car and agreed to recommend a loan thereon of $1,200 net, together with the usual charges in such cases. He then prepared the mortgage note sued on, but left the amount thereof blank,

awaiting instructions from appellant. He at the same time prepared an instrument called a credit statement. Said statement contained various items of information about the make and condition of the mortgaged car, appellee's financial responsibility, and his personal standing. It contained a statement that appellee's car was incumbered with a lien to secure the sum of $385. It also contained a recital that appellee appointed Beaumont Finance Company (Hinckley) to act as his agent in selling said note, and that he understood that said Hinckley was not the agent of any corporation directly or indirectly connected with the transaction. Said statement was evidently prepared by filling blanks in a form provided for that purpose. On the back of the same there was another form, addressed to appellant and signed by Hinckley. While the same purported to offer said note to appellant for purchase, the form called for a personal inspection of the mortgaged car, an estimate of its value based thereon, its condition in detail, and a report on the moral and financial standing of appellee. All the information called for by such form was given therein. While there is no direct testimony that appellant prescribed the form and contents of this credit statement, there is testimony tending to show that such form and contents met the requirements and had the approval of appellant. Appellant declined to loan $1,200 net on appellee's car, but offered to loan $1,000 and charges thereon. Appellee accepted this proposition and instructed Hinckley to fill the blanks in the note on such basis. Hinckley fixed the charges at the sum of $157, made the note promise payment of $1,157 together with interest thereon, in ten equal monthly installments, and informed appellee that he would send the same to appellant in Dallas and receive the proceeds thereof in about three days. Appellee informed him that he was in dire need of money to prevent the seizure of said car under the lien then existing thereon. Hinckley then offered to loan him $400, to be retained by him out of the proceeds of the note when he received the same from appellant. Appellee accepted this offer, and received Hinckley's check for $400. He used $385 thereof to discharge the lien then on the car, and secured a release thereof. There is no testimony that Hinckley knew as a fact that said lien had been released. Appellant introduced testimony showing that it promptly remitted the sum of $1,000 to Hinckley on receipt of said note. Appellee applied to Hinckley at the time appointed for the remainder of the proceeds of said loan. Hinckley informed him that appellant had declined to make a loan, on the ground that it appeared from his financial statement that he ought to be able to finance himself at his bank. Appellee then advised Hinckley that he did not have the money to repay the $400 advanced to him, and it was agreed between them that such repayment should be made in installments as rapidly as appellee was able to do so. Hinckley suggested that he would hold appellee's said note until such sum was fully repaid, and appellee acquiesced in such suggestion. Appellee paid Hinckley $100 on October 15th and the further sum of $35 to Hinckley's wife on October 22d. About that time Hinckley disappeared, and his whereabouts remained unknown at the time of trial. He never paid appellee any part of the $1,000 remitted to him by appellant as the net proceeds of said note. Other facts will be stated in connection with the issues of law hereinafter discussed.

Appellee refused to pay said note, and appellant instituted this suit. It alleged that it was an innocent purchaser of the note from Hinckley for a valuable consideration before maturity and without notice of any infirmity in his title thereto. Appellee pleaded failure of consideration, and further alleged that the sale of said note was never consummated by the payment to him of the proceeds thereof. Further statement of the pleadings of the parties so far as deemed necessary will be made in connection with the issues of law hereinafter discussed.

The case was submitted to a jury on special issues. Such issues and the answers of the jury thereto were as follows:

"(1) Do you find from a preponderance of the evidence that E. O. Hinckley, in the negotiations and transactions relating to the origin of said note and mortgage sued on, was not acting for himself alone? Answer: He was not.

"(2) For whom was he acting? Answer: American Mortgage Corporation."

The court recited said findings in his judgment, and further recited that the evidence on all other material issues was undisputed. He found specifically that Hinckley was the agent of appellant in the transaction involved, that appellee received no consideration from appellant for the note sued on, and that said loan was not consummated. Based on the verdict of the jury and the additional findings so made, the court rendered judgment denying appellant any recovery herein.

### Opinion.

Appellant, by various assignments of error, assails the sufficiency of the findings of the jury to support a judgment against it. Appellant objected to the issues submitted on the ground that they were immaterial; that they were vague and indefinite; that findings in response thereto that Hinckley was acting for appellant in the negotiations and transactions relating to the origin of said note and mortgage would not establish either actual or apparent authority to so act; and that the

existence of either actual or apparent authority should be determined by the jury. Appellee's credit statement, as hereinbefore recited, showed that appellee's car was then incumbered with a lien. Appellee testified that said credit statement was prepared by Hinckley, that he told him it was an application for the loan and asked him to sign the same, and that he did so without reading the clause relating to Hinckley's agency for him. The statement as introduced in evidence purported to be attested by two witnesses and verified by appellee's affidavit before a notary public. Appellee testified there were neither witnesses nor notary present, and that he never swore to the same before any one. Appellant's president testified that he examined such statement; that he accepted the note upon the representations contained therein; that he did not know whether Hinckley had paid Spencer the money on said note or not; but that he remitted to Hinckley $1,000 therefor. Appellant's president further testified that appellant had an agreement with Hinckley outside of the written contract to perform certain services, and that such services were covered by his bond. Appellant's president further testified that he did not know whether appellant ever bought any paper from Hinckley that had been paid for by him; that when appellant sent money to him for such paper it required him to see that existing mortgages, if any, were released before he delivered the money; that such was the universal rule; that they remitted the money to him knowing he was going to comply therewith; and that it relied on his bond in event he failed to do so. Said witness further testified that the remittance for this particular note was by check and that he supposed appellant had the returned check and copy of the letter transmitting the same. Neither such check nor copy of such letter was produced. Said witness also testified that Hinckley dealt with customers according to plans prescribed by appellant. He claimed specifically that Hinckley was not appellant's agent, but that all the services performed by him for it or in its interest were performed on special instructions with reference to the specific thing to be done, and that he was never its general agent for any purpose. The testimony showed that the services performed for appellant by Hinckley mentioned in the testimony of appellant's president included not only securing and offering loans to appellant for its acceptance, but also receiving payments thereon and repossessing cars for nonpayment thereof. While said witness testified that the installments on such loans were to be paid direct to it at its Dallas office, he further testified that it, for convenience, permitted such payments to be made to Hinckley. Said witness further testified that at the time Hinckley disappeared he was indebted to appellant in

the sum of three or four thousand dollars, which was more than the amount of his fidelity bond.

A party dealing with an agent is bound at his peril to ascertain not only the fact of agency, but the extent of the agent's powers, and, in case either is controverted, the burden of proof is upon him to establish it. Overton v. First Texas State Ins. Co. (Tex. Civ. App.) 189 S. W. 514, 516, and authorities there cited. Where, however, the purported agent has no authority in fact and the principal is sought to be held on the ground of apparent authority, the doctrine of estoppel is invoked. The rule in such cases is recited in Lane v. Sullivan (Tex. Civ. App.) 286 S. W. 541, 542, 543, to which and the authorities there cited reference is here made.

Appellant expressly denied that Hinckley had any authority to act for it in receiving applications for loans, preparing the necessary notes and liens, forwarding the same to it for acceptance and receiving from it and delivering to the borrower moneys paid by it thereon. We may concede that appellant's whole plan of operation was devised and all the written instruments were prepared with studied care to attempt to secure to appellant the benefits arising from the services of an active local representative at each place it saw fit to seek loans, but at the same time to secure immunity from liability for the wrongful acts of such representative. The real relation of the parties, however, is to be determined from all the evidence in the case. We think the evidence raised an issue of fact with reference to whether Hinckley was appellant's agent, with authority, express or implied, to negotiate loans, inspect the security offered, appraise the same, report on the moral and financial standing of applicants therefor, receive from appellant the moneys loaned and to deliver the same to borrowers when appellant's requirements were fully complied with. We refrain from further discussion of the same in view of another trial. McLean v. Ficke, 94 Iowa, 283, 62 N. W. 753 et seq; Bell v. Riggs, 34 Okl. 834, 127 P. 427, 41 L. R. A. (N. S.) 1111; Clarke v. Havard, 111 Ga. 242, 36 S. E. 837, 51 L. R. A. 499; Stockton v. Watson (C. C. A.) 101 F. 490, 498; Peterson v. Metropolitan Life Ins. Co. (D. C.) 19 F.(2d) 74; Metropolitan Life Ins. Co. v. Peterson (C. C. A.) 19 F.(2d) 88; Colwell v. Grandin Inv. Co., 64 Mont. 518, 210 P. 765, 767, 768; Pan-American Life Ins. Co. v. Texas Mortgage Loan Co. (Tex. Civ. App.) 22 S.W.(2d) 150, and authorities there cited; 2 C. J. p. 446 et seq., pars. 44 to 47, inclusive. We also think that the evidence raised an issue of apparent authority on the part of Hinckley to act for appellant in such cases. Lane v. Sullivan, supra. Should it be determined that Hinckley was the agent of appellee and not appellant in negotiating

the loan and preparing and forwarding the note and credit statement submitted therewith, we think the evidence raised a further issue with reference to whether he was instructed by appellant to withhold the proceeds thereof from appellee until appellee delivered to him a release of the prior mortgage on his car, and whether he was holding the proceeds of said note as appellant's agent under such instruction at the time he absconded. Metropolitan Life Ins. Co. v. Peterson (C. C. A.) supra, 19 F.(2d) 88, page 91; 2 C. J. p. 448, §§ 46 and 47, and authorities cited in notes thereto.

■ We now recur to the question of the sufficiency of the issues submitted by the court in this case to sustain the judgment for appellee, considered in the light of appellant's objections thereto. It will be noted that the issues submitted ignored the question of Hinckley's authority to act for appellant in the transaction under consideration, or assumed that such authority existed merely because he so acted. Appellant, by pertinent objections, called the attention of the court to the fact that the question of Hinckley's authority, actual or apparent, should be determined by the jury. Such objection was overruled. The burden was on appellee not only to establish such authority by evidence, but also to secure a finding that it existed. The duty to request the submission of issues extends only to those which are essential to the cause of action or defense of a party. There was no duty on appellant to request the submission of issues essential to appellee's recovery. Citizens' Nat. Bank v. Texas Compress Co. (Tex. Civ. App.) 294 S. W. 331, 338, writ refused. Having made a proper objection to the sufficiency of the issues submitted by the court in this case to sustain a judgment for appellee, appellant was not required to prepare and request the submission of such omitted issues, and can base its prayer for reversal on such objection alone. The effect of such objection was to deprive the trial court of authority to make a finding, either express or implied, upon the issue of Hinckley's authority to act for appellant in the transaction involved in this case. Robertson & Mueller v. Holden (Tex. Com. App.) 1 S. W.(2d) 570, 571, par. 4; United Fidelity Life Ins. Co. v. Fowler (Tex. Civ. App.) 38 S.W.(2d) 128, 131, par. 5; Butler v. Herring (Tex. Civ. App.) 34 S.W.(2d) 307, 309, par. 2; Christian v. Dunavent (Tex. Civ. App.) 232 S. W. 875, 878 (top second column); Gulf, C. & S. F. Ry. Co. v. Hines (Tex. Civ. App.) 4 S.W.(2d) 641, 649, pars. 8 and 9; Texas & Pacific Coal & Oil Co. v. Stuard (Tex. Civ. App.) 7 S.W.(2d) 878, 882; Texas Nursery Co. v. Knight (Tex. Civ. App.) 292 S. W. 588, 589, par. 3, and authorities there cited; Liddell v. Gordon (Tex. Com. App.) 254 S. W. 1098, 1100, par. 3. For the error in overruling appellant's objections,

duly presented, to the sufficiency of the issues submitted to support the judgment for appellee rendered herein, such judgment will be reversed.

■ Appellant, by trial amendment, sought in event of its failure to recover the entire amount of the note sued on, to recover the sum of $265, the unpaid balance of the amount turned over to appellee by Hinckley in contemplation of the acceptance of said loan by appellant. As hereinbefore recited, there was testimony that, when the loan to appellee on his car in the net amount of $1,000 had been agreed upon by all the parties, Hinckley, at appellee's urgent request, advanced him $400 to be retained by Hinckley out of the proceeds of the loan when received from appellant. If so, when Hinckley received the proceeds of such loan, if he did receive them, he became entitled immediately as against appellee to repay himself out of the same, and appellee, to the extent of such unpaid balance, received consideration for the note sued on. Should said plea be presented upon another trial and testimony introduced in support of the same, the issues arising thereon should be submitted to the jury for determination.

The judgment of the trial court is reversed, and the cause is remanded.