HILDO C. YEOMAN, Respondent, *v.* WILLIAM McCLENAHAN et al., Appellants, Impleaded with Others.

MORTGAGE FORECLOSURE — DEFENSE OF WANT OF CONSIDERATION — LOSS RESULTING FROM FRAUD AS BETWEEN INNOCENT PARTIES. Where the defense in an action for the foreclosure of a mortgage on real property is want of consideration, and it appears that the plaintiff intrusted the amount expressed as the consideration of the mortgage to his attorney and agent, who converted it to his own use, and there is no evidence sufficient to warrant the inference that the said attorney acted as the agent of the owner of the property, the signature to the mortgage, in the absence of any consideration or benefit moving to the mortgagor or to her estate, has no legal significance, and the complaint is properly dismissed under the rule that where one of two innocent persons must suffer from the wrong or fraud of a third party, he must bear the loss whose action enabled such party to perpetrate the wrong or fraud.

*Yeoman* v. *McClenahan*, 114 App. Div. 921, reversed.

(Argued October 10, 1907; decided December 3, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered

July 24, 1906, which reversed a judgment in favor of defend-
ants entered upon a decision of the court on trial at Special
Term and granted a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*George V. Brower* for appellants. Proctor was the attor-
ney, agent and adviser of the plaintiff. Their relations were
of trust and confidence and had been such for nearly twenty
years last past. (*Smith* v. *Kidd,* 68 N. Y. 130.) There are
no facts in the case to warrant the presumption that Proctor
became the agent of the defendant, and the effort to do so is
not supported by the evidence. (*Graves* v. *Mumford,* 25
Barb. 94; *Plass* v. *Brussie,* 21 N. Y. Wkly. Dig. 562.)

*Cyrus V. Washburn* and *George W. Sickels* for respondent.
Proctor was the agent of the McClenahans to get a new mort-
gage loan and with the money so raised to pay and discharge
the old mortgage. When they executed and delivered the
new bond and mortgage with directions to Proctor to pay the
old mortgage with the money from the new, Proctor having
the money on the new loan, it became the property of the
McClenahans in the hands of Proctor as their agent, and the
bond and mortgage belonged to the plaintiff. (*Henken* v.
*Schwicker,* 174 N. Y. 298; *Lipman* v. *Noblit,* 194 Penn. St.
416.) The doctrine that when one of two innocent persons
must suffer from a wrong, he must bear the loss whose action
enabled the wrong to be done, cannot be invoked here by the
appellants. (*Rapps* v. *Gottlieb,* 142 N. Y. 164; *Marden* v.
*Dorthy,* 160 N. Y. 39; *Henken* v. *Schwicker,* 174 N. Y. 298.)

O'BRIEN, J. This was an action to foreclose a mortgage
and the defense was a want of consideration. The trial court
sustained the defense and dismissed the complaint upon find-
ings of fact and law, which precluded any other disposition
of the case, but the learned Appellate Division reversed the
judgment and granted a new trial, stating that the decision
was upon the law and the facts. The statement that the

reversal was upon the facts as well as the law has no effect upon this appeal, since it is very plain that there was no conflict in the evidence or any dispute about the facts and no opportunity to draw conflicting inferences of fact or law, and hence the reversal must be considered as involving questions of law and not of fact. This court has often decided that the statement in the order of reversal that it was made upon the facts does not necessarily raise any question of fact unless it appears from the record that some question of fact was involved in the case. (*Griggs* v. *Day*, 158 N. Y. 1; *O'Brien* v. *East River Bridge Co.*, 161 N. Y. 539; *Buffalo & L. Land Co.* v. *Bellevue Land & Impr. Co.*, 165 N. Y. 247.)

That the defendants never received any money or valuable thing as a consideration for the mortgage in question is a fact not open to any dispute and is conceded on all sides. It appears, without any dispute, that the plaintiff intrusted the $1,500 expressed as the consideration of the mortgage to his own attorney and agent and that the latter converted it to his own use and disappeared from the city and is still a fugitive from justice. The only question that the case presents is one of law, and that is whether, upon the undisputed facts brought out at the trial, it was the plaintiff or the defendants that took the risk of this man's honesty and must bear the loss due to his default. In other words, whether he was the agent of the plaintiff or the defendants when he fraudulently appropriated the money to his own use. The trial court found that he was the plaintiff's agent, and as the money which the plaintiff gave to him to loan never, in whole or in part, reached the defendants, it was held that the plaintiff's complaint should be dismissed. I think that this finding was correct and no fair view of the evidence will sustain any other conclusion. Hence, it becomes necessary to refer to the evidence given at the trial as it appears in the record. The plaintiff was the only witness sworn in his own behalf and the defendant William McClenahan the only witness for the defense. The two men had never met or ever known each other prior to the transaction in question. They never had

any interview or any conversation with each other, and hence it would be quite impossible that a conflict could arise with respect to the part that each played in the transaction, and that part can be stated in a few words from the evidence in the record.

In the month of January, 1903, Mrs. McClenahan was the owner of the house in Bergen street, Brooklyn, upon which it is claimed that the mortgage in question became a lien. She resided in the house with the defendant, her husband, and their three children, the husband working at his trade, that of a carpenter. The plaintiff was evidently a man of means who had been engaged in loaning money for nearly twenty years. During that time he always employed an attorney named Proctor as his agent to transact the business. This agent was an old and trusted employee, and the relations between them were those of attorney and client. The attorney presented to his client, the plaintiff, an application for the loan in question and two other loans, which was in writing, signed by the agent in his own name. The plaintiff concluded to accept the loan in question, and also another loan on another property to the extent of $2,000. In order to enable the attorney to close up both loans and take the securities the plaintiff drew his check for $3,500 to the order of his attorney and delivered it to him, instructing him to procure a first mortgage on the premises in question, which, of course, involved the necessity and duty on the part of the attorney and agent of paying off and procuring satisfaction of any existing mortgage that was a prior lien on the premises. The attorney proved to be unfaithful to the trust and confidence which the plaintiff reposed in him, since he drew the money on the check and converted it to his own use and subsequently fled from the city. He did not even deliver the bond and mortgage in this case to the plaintiff, but kept them in his own possession, advising his client to allow him to do so, on the ground that he might need them to collect the interest from time to time as it fell due. This is the transaction as stated by the plaintiff himself, and so far there can be no doubt that the trial court was right

in holding that the plaintiff should bear the loss resulting from the fraud of his own agent.

But the learned counsel for the plaintiff now contends that, in the process of producing the mortgage in question, the character of Proctor, as the plaintiff's agent and attorney, was so changed and shifted that in some way he became the agent of the defendants. We must, therefore, listen for a moment to the defendants' version of the transaction, which is in complete harmony with that of the plaintiff's. The defendants never employed Proctor to do any thing for them or to act for or to represent them in any way. They came together in this way: It appears that Proctor had other clients than the plaintiff for whom he acted in a similar capacity. One of these clients was a man named Hutcheson, who held a mortgage of $1,500 on the defendants' house in Bergen street. Proctor sought out the defendant, the husband, and told him that Hutcheson wanted to call in this mortgage. That was the first interview, so far as appears, that he and Proctor had ever had in regard to the transaction in question, and the latter was evidently representing his client Hutcheson. The defendant then said, if that was so, he must look somewhere else for the money. Proctor then said : " You need not, I will get another of my clients to take the mortgage." Some days after this Proctor came to the house and procured the defendants to sign the bond and mortgage in this case for $1,500. At that time the husband said to him : " What about the satisfaction piece ? " The attorney said he could not get that until he took the bond and mortgage back and showed it to his client, the plaintiff, and would then get the $1,500 and pay off the prior mortgage. He said to the defendant that the mortgage in question was to be a first mortgage and the directions of the plaintiff were to procure a first mortgage ; which involved the duty of the agent to the plaintiff to remove the old one. This is the transaction as related by the defendant, and it seems to me to be impossible to give to Proctor any other character than the plaintiff's agent, from the beginning to the end

of the transaction. The attorney was certainly guilty of a breach of trust and duty; but who could sue him for the money? Clearly, the plaintiff, and no one else. The defendant did not direct or require him to do any thing for him, but was a mere passive instrument in a transaction by Proctor himself in order to collect a mortgage for one client and effect a loan of money for another. The relation of attorney and client for twenty years and the trust and confidence resulting from that relation were the elements in the case that set the attorney in motion, and the circumstance that the plaintiff made the check payable to his order was the final act which made the fraud possible.

The case has thus far been considered as if William McClenahan was the only party defendant concerned in the transaction or affected by the mortgage; but that is not the fact. His wife was the owner of the property upon which it is claimed the mortgage is a lien. It became a lien upon her property, if at all. She died in July, 1904, about eighteen months after the execution of the mortgage and her children and heirs at law are the only defendants who have any interest in the controversy. These facts appear from the pleadings, findings and the mortgage itself. One of the children, who is an infant, has appeared by his guardian and has served the usual answer submitting all his rights to the judgment of the court. No one claims, and certainly it does not appear, that the wife who owned the property ever had any conversation with Proctor, or gave him any order or direction. It is impossible to perceive how her estate can be bound by any of his acts, or upon what principle it could be depleted by his default. Her signature to the mortgage has no legal significance, in the absence of any consideration or benefit whatever moving to her or to her estate, or to any one else. There is not the slightest ground disclosed in the record for the claim that Proctor was her agent. The truth is he represented no one in the transaction except his two clients, the plaintiff and Hutcheson, collecting and discharging a mortgage for the latter and perfecting a loan upon a first mortgage for the former.

The learned Appellate Division wrote no opinion in the case, and all we can know as to the ground upon which the reversal proceeded is the statement in the record that it was upon the authority of *Henken* v. *Schwicker* (174 N. Y. 298). In that case the defendant, who was the borrower, employed the broker to procure the loan for him, and the broker acted for him and under his directions from the beginning to the end of the transaction. It was the defendant in that case that set the broker in motion, and not the plaintiff, as in the case at bar. The court held that the loss in the case cited should be borne by the party who had employed the defaulting broker. In the present case an attorney who had acted for the plaintiff in the business of loaning money for nearly twenty years had no professional or other relations with the defendant, but acted for two of his clients; that is, for Hutcheson to collect and satisfy an old mortgage and for the plaintiff to perfect a loan upon a new mortgage to take the place of the old one. The two cases are so dissimilar in their controlling and material facts that the authority of one has no application to the other.

It is finally suggested in behalf of the plaintiff that the old mortgage has been paid off, or at least that it does not appear by the record to be still in force. If it was paid off it must have been paid by Proctor before his disappearance. Without stopping to inquire upon whom the burden of proof was to show such payment, if material, it is plain that the suggestion has no foundation in fact. In the first place it was conceded or assumed at the trial, on all sides, that the old mortgage was still in force and a lien and the findings of the trial court are to that effect. But the plaintiff himself testified that after Proctor had disappeared he discovered the fact that the mortgage in this suit was a second mortgage. It could not very well be a second mortgage if the prior mortgage had been paid off; so that the plain meaning of the statement was that the old mortgage was still unpaid.

This case is fairly within the rule in equity that where one of two innocent persons must suffer from the wrong or fraud

of a third party, he must bear the loss whose action enabled the third party to perpetrate the wrong or fraud. The defendants did nothing to enable Proctor to commit the fraud, but the plaintiff placed himself and his money completely in his hands.

The order· of the Appellate Division should be reversed and the judgment of the Special Term affirmed, with costs in both courts.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN, HISCOCK and CHASE, JJ., concur.

Ordered accordingly.