## OWINGS v. HOWINGTON *et al.*

No. 1009. Opinion Filed November 14, 1911.

Rehearing Denied March 12, 1912.

(120 Pac. 260.)

1. **PRINCIPAL AND AGENT—Agency.** Where a borrower, by a written application or otherwise, expressly makes an intermediary his agent, for the purpose of negotiating a loan and receiving the proceeds, the intermediary is the agent of the borrower, and not of the lender.

2. **SAME—Wrongful Acts of Agent—Evidence.** Evidence examined and considered, and held not sufficient to sustain the verdict of the jury, finding that Hagan was the agent of the lender in negotiating the loan, and that the loss resulting from the failure of Hagan to pay over the money to the borrower, delivered to him for that purpose by the lender, falls upon the lender.

(Syllabus by the Court.)

*Error from District Court, Greer County;*
*James R. Tolbert, Judge.*

Action by Wylie H. Howington against J. A. Graham, in which M. R. D. Owings intervened. Judgment for plaintiff, and intervener brings error. After appeal both Wylie H. Howington and Fannie I. Howington, his wife, died intestate, and action was revived in the name of A. B. Howington, as guardian of Hattie C. Howington. Reversed and remanded, with directions.

*C. G. Hornor* and *Stanley, Vermillion & Evans,* for plaintiff in error.

*J. A. Powers* and *Charles M. Thacker,* for defendants in error.

KANE, J. This was an action commenced by Wylie H. Howington, since deceased, against J. A. Graham, for the purpose of removing a cloud from the title of certain real estate.

The petition alleges, in substance, that the plaintiff contracted with defendant for a loan of $500, to be secured by mortgage on

real estate; that he executed said note and mortgage, but the defendant refused to make the loan; that the mortgage is on record in the county wherein the land was situated, and constitutes a cloud on his title. Thereafter the plaintiff in error, M. R. D. Owings, intervened, and filed an answer and cross-petition. By way of answer, he alleged, in substance, that said plaintiff executed and delivered to H. H. Hagan, of Guthrie, Okla., a written application for a loan, whereby he appointed said Hagan his agent to negotiate for said loan and to receive the proceeds thereof; that said Hagan presented said application to the defendant Graham, who agreed to and did make said loan, and paid over to Hagan the full amount thereof, as agent for said plaintiff; that in consideration thereof said Hagan delivered to Graham the note and mortgage mentioned in plaintiff's petition; that if plaintiff did not receive the proceeds of said loan it was because of no delay, default, or defalcation on the part of said defendant or of said Graham, but was due wholly to the delay, default, and defalcation of the plaintiff or of his said agent; that after the execution and delivery of said note and mortgage, and before the maturity thereof, said Graham, for a valuable consideration in the usual course of business, sold and indorsed, signed and delivered, said note and mortgage to said Owings, by his written indorsements, and assignment duly executed thereon; and that said Owings is now the owner and holder thereof. Wherefore he prayed judgment for the amount due on the note and a decree foreclosing the mortgage.

One of the allegations of Owings' cross-petition is to the effect that at the time of the execution of said note, but before the delivery thereof, the defendant James Brown indorsed the same by writing his name on the back thereof, which indorsement, so made as aforesaid, was by the said defendant James Brown duly executed, and that he (the said James Brown) thereby undertook and assumed the payment of said promissory note, and agreed to pay the same; and that said promissory note was thereafter delivered to the said J. A. Graham with said indorsement thereon.

In his reply the plaintiff admitted that he signed the note, coupons, and mortgages mentioned in said answer and cross-petition, and that he acknowledged said mortgage; and further alleges, in substance, that he denies that he appointed H. H. Hagan his agent to negotiate or procure a loan of money from said Graham, or for any other purpose; and he denies that the said Hagan had any authority from plaintiff to apply to said Graham, or to any other person, for a loan of money to this plaintiff; and he denies that the said Hagan did apply to or procure from the said J. A. Graham for plaintiff the loan of money, as stated in said answer; and plaintiff denies the said Graham paid the said Hagan, as plaintiff's agent, any money; and he denies the said Hagan, as such agent, received from said defendant any money for plaintiff, as the consideration of said note and mortgage, or of either of them. After these specific denials, he admits that, prior to the execution of the note and mortgage referred to in the answer of defendant, he applied to one James Brown, of Mangum, Greer county, Okla., for a loan of $500; that said Brown was then and there the authorized agent of H. H. Hagan to take applications to and in the name of the said H. H. Hagan for the loan of money, and to make and receive contracts for such loans by and in the name of the said Hagan, and to take notes and mortgages to and in the name of said Hagan for money so loaned; that the said James Brown, as such agent of H. H. Hagan, agreed with plaintiff that the said Hagan would loan plaintiff said sum of money, if he would execute and deliver to the said Hagan certain notes and a mortgage lien upon plaintiff's land to secure the payment thereof, which plaintiff agreed to do, and then and there the said James Brown, as such agent, made and presented to this plaintiff an instrument in writing which he then and there informed the plaintiff was an application to the said Hagan for the loan of said sum of $500, and showing a description of plaintiff's land on which the mortgage would be executed to secure the payment of said sum; that plaintiff did not read said instrument, but relied upon the statement so made to him

by said James Brown, agent, as aforesaid, and which statement
he believed to be true, and then and there signed said instru-
ment, at the request of said agent, James Brown, so under-
standing and believing that said instrument was an application
to said H. H. Hagan for the loan of $500, and contained a
description of plaintiff's land on which he was willing to give
and would give a mortgage lien to secure the payment of said
money; and plaintiff says that he received no consideration
whatever for the signing of said instrument, and signed the
same for no other purpose than as hereinbefore stated. Then
follow numerous other paragraphs, wherein he sets up fraud
and collusion between Brown, Graham, and Owings, and a prayer,
practically the same as the petition, with an added paragraph to
the effect that, if for any reason it should be ascertained and
found that the defendant M. R. D. Owings should recover against
plaintiff by reason of said notes, or for the foreclosure of said
mortgage, then plaintiff prays for judgment over and against
the said defendant J. A. Graham for such sum as may be re-
covered by the said Owings against this plaintiff, and for such
other general and special legal and equitable relief to which the
merits of the case entitle him. After the issues were joined,
there was a trial before a jury, which found for the plaintiff
for the cancellation of the notes and mortgage, and for the inter-
vener M. R. D. Owings, in the sum of $500 and accrued interest,
against the defendant James Brown, upon which judgment was
duly entered, to reverse which this proceeding in error was com-
menced.

The court below in his instructions to the jury stated the
issues, in substance, as follows: The plaintiff in this action sues
the defendant J. A. Graham for the cancellation of a note for
$500 and interest coupons thereto attached, together with real
estate mortgage, to secure the same, on land alleged to belong
to him. The plaintiff alleges that at the date of the instruments
he was the owner of said land, and that he and his wife, Fannie
I. Howington, made, executed and delivered these notes in con-
sideration of the sum of $500 to be paid to them by the defendant

J. A. Graham. The plaintiff says that he performed his part of said contract, and delivered the note and mortgage to James Brown, to be delivered to J. A. Graham upon the receipt of the money, which was then to be remitted to the plaintiff; but plaintiff says that the defendant Graham and the said James Brown, who is also made a defendant in this action, have refused and failed to pay him the money for said note and mortgage; that said mortgage has been recorded on the deed records of Greer county, Okla., and is a cloud upon his title, and that the consideration for said note and mortgage has totally failed, and asks that said mortgage and note be canceled, and the cloud removed from his title.

The defendant J. A. Graham, in answer to said petition, admits the execution of the note and mortgage by the plaintiff, and that plaintiff was the owner of the land described in his petition. In defense to the action, the defendant Graham says that the plaintiff, at and prior to the execution of the mortgage and note on December 6, 1902, made a written application before the defendant James Brown for a farm loan on his land, by the terms of which plaintiff appointed H. H. Hagan, of Guthrie, Okla., plaintiff's agent to procure for him a loan upon said land; and that he (the said Graham) in due course of trade bought said note and mortgage from the plaintiff through his said agent, H. H. Hagan, and paid value for it to said Hagan; and that, while he admits that the plaintiff has not received the money for said loan, he says it is not his fault, but the fault of said Hagan, the agent of plaintiff.

The intervener, M. R. D. Owings, has intervened in this action, and says that he is the present owner and holder of said note and mortgage; that he bought the same in due course of trade from defendant J. A. Graham, for a valuable consideration, and that, by reason of the default in the payment of the first installment of interest on said note, the whole debt is now due, and he asks judgment against the plaintiff for the amount of the note and the foreclosure of the mortgage.

The court stated the law of the case as follows:

"Gentlemen of the jury, you are instructed that, as a matter of law, the application for the loan made by the plaintiff and introduced in evidence by the defendant was authority from the plaintiff to H. H. Hagan to procure for him a loan upon the plaintiff's land. If, therefore, you find and believe from the preponderance of the evidence in the case that, pursuant to said written application, the said H. H. Hagan, for and in behalf of the plaintiff, sold to the defendant J. A. Graham the note and mortgage in controversy, and received money therefor from said Graham for the benefit of plaintiff and as plaintiff's agent, and that subsequent thereto the said J. A. Graham indorsed and delivered, for valuable consideration, to the intervener, Owings, the note and mortgage in controversy, then you are instructed that the plaintiff cannot recover, and that the defendant Owings would be entitled to recover of the plaintiff judgment for the amount of the note, also against defendant James Brown, and to foreclosure of the mortgage. If, however, you should find and believe from the evidence that at the time the plaintiff executed and delivered the note and mortgage to the defendant James Brown that H. H. Hagan, together with said James Brown, were the agents in fact of the defendant J. A. Graham in the securing of said loan and the purchase of said note from the plaintiff, and you further find that at the time said written application was given by the plaintiff to H. H. Hagan that said H. H. Hagan was the agent of said J. A. Graham in procuring for Graham farm loans in Oklahoma, then and in that event the plaintiff would be entitled to recover."

It is apparent that in the court below the case turned upon the question of the agency of Hagan, as no other question was submitted to the jury. We will therefore consider it from that standpoint alone. There is really no controversy over the execution of the application for a loan. Plaintiff admits that he signed it, but states that he did not read it, because he was in a hurry; and the court treated that fact as established, and instructed the jury "that, as a matter of law, the application for the loan made by the plaintiff and introduced in evidence by the defendant was authority from the plaintiff to H. H. Hagan to procure for him a loan upon the plaintiff's land," and we think there is no room for a difference of opinion on that point. The

application for a loan, among other things, contains the following:

"I hereby appoint H. H. Hagan, of Guthrie, Okla., my special agent to procure the loan for me, and authorize you to pay the proceeds of the same to my said agent. If this application is accepted, I will furnish at my own expense, a complete abstract of title to the land proposed as security, pay expenses of examination and appraisement of the property, and pay for recording the mortgage. I also agree to furnish the mortgagee, each year during the continuance of the loan, with evidence that all taxes against said property have been paid. And I do hereby promise to pay you such sums as may be agreed upon to compensate you for procuring this loan for me. And I do further agree that, should I decline to complete this loan, or should it fail through no fault of yours, I agree to pay all examination expenses you may have incurred in perfecting your arrangements to procure said loan, and you are hereby authorized to perfect any flaws in my title of record at my expense."

The part of the application appointing Hagan agent for the borrower, defining his power, and providing for his compensation is unambiguous, and, as there is nothing in the record tending to contradict its terms or the evidence of Mr. Graham, relating to his relations with Hagan, we do not think the verdict of the jury and the judgment and decree entered thereon ought to be sustained.

There is no substantial conflict in the evidence, which, in a nutshell, discloses the following situation: Mr. Howington empowered an unworthy agent to procure a loan for him and to receive the money thereon. The agent negotiated the loan through a third person, as by the terms of his appointment he undoubtedly was authorized to do, received the money thereon, but failed to turn it over to his principal. In such a case, the principal must suffer the loss, rather than the third person. The rule seems to be well settled that, where a borrower, by a written application or otherwise, expressly makes an intermediary his agent, for the purpose of negotiating a loan and receiving the proceeds, the intermediary is the agent of the borrower, and not of the lender. 31 Cyc. 1222; *Knox County v. Goggin*, 105 Mo. 182, 16 S. W. 684; *Cooper v. Headley et al.*, 12 N. J. Eq. 48;

*American Mortg. Co. v. King,* 105 Ala. 358, 16 South. 889; *Lantry v. Sutton* (Com. Pl.) 5 N. Y. Supp. 14. The foregoing cases and others cited in Cyc., *supra,* in support of the text fully sustain the conclusion reached.

There are a great many cases which hold that the fact that the application for a loan recites that the intermediary is the agent of the borrower is not controlling, if the facts and circumstances are such as to make the intermediary the agent of the lender as a matter of law. *McLean v. Ficke et al.,* 94 Iowa, 283, 62 N. W. 753; *Larson v. Lombard Inv. Co.,* 51 Minn. 141, 53 N. W. 179; *Jensen et al. v. Lewis Inv. Co.,* 39 Neb. 371, 58 N. W. 100. In those cases, and others of that class, where the lender was engaged in the business of loaning money upon real estate mortgages, and employed correspondents or agents in different localities, whose duty it was to receive applications for loans directed to the loan company upon forms furnished by it and forward the same to such company for examination and approval, the defaulting intermediaries were held to be the agents of the lenders. This case does not belong to that class. In the case at bar, the application was made directly to Hagan, who, by its terms, was authorized to procure the loan from whomsoever he could and receive the proceeds for the borrower, by whom he was to be compensated for all the services rendered. As witness Brown testified, in substance, who was admittedly the local agent of Hagan:

"I never had any talk or correspondence with Graham. I took applications and sent them in. I did not know who might make any particular loan that was applied for. In the present instance, did not know who would make the loan; they were all made through Hagan."

Graham was an employee of a harvester company, and he and several of his coemployees had been making occasional investments, secured by Oklahoma real estate mortgages. Concerning the loan involved in this controversy and his relations with Hagan, he testified as follows:

"Q. You are a defendant in this case, are you not, Mr. Graham? A. Yes, sir. Q. Mr. Graham, you do not claim any

present interest in the note and mortgage involved in this action, do you? A. No, sir; I deem myself fortunate in being out of it. Q. You did at one time have an interest in the note and mortgage involved in this action, did you not? A. Yes, sir. Q. You may state how you acquired that interest. A. I received the application for a loan of $500, and on looking it over I deemed it a good loan and advanced the money on it. Q. How much money did you advance? A. Five hundred dollars. Q. To whom was this money paid? A. This was paid to Mr. Hagan. Q. You mean H. H. Hagan, of Guthrie, Oklahoma Territory? A. Yes, sir. Q. Why did you pay the money to H. H. Hagan? A. The application came through him as the agent of the applicants. Q. Do you remember what portion of the application referred to led you to send the money to Mr. Hagan? A. Well, his being represented as their agent, of course, I had no direct dealing with them. The application itself, which was signed by Howington and his wife, set forth the fact that Mr. Hagan was their agent, authorized to negotiate for the loan and receive the money on it, and so I thought they wanted me to pay the money to him, and I did it. Q. Did you know Mr. Hagan personally? A. I never saw him. Q. Did you ever employ him to transact any business of any kind for you? A. No, sir; I did not. Q. Did he ever transact any business for you? A. He never did. Q. Did you ever request him to represent you or transact any business at all for you? A. No, sir; I never did. Q. Now please state what, if any, business transactions you have had with Mr. Hagan, other than you have stated. A. Well, I took another loan or two that he sent in just as he sent the Howington loan in; and that is all I ever had to do with Mr. Hagan one way or another. Q. Now when did you send the money on this Howington loan? A. February 9, 1903. Q. Do you know whether or not, at the time you sent the money, you had in your possession the note and mortgage? A. I did. Q. And the application? A. Yes; I had; it was the first received. Q. Then you did not receive the note and mortgage and application at the same time? A. I think not; I got the application first. Q. Then, after you got the application and approved the loan, you received the note and mortgage; that is correct, is it? A. Yes, sir. Q. And after receiving the note and mortgage you forwarded the money; that is right, is it? A. Yes; I paid the money. Q. What, if anything, did you do with this note and mortgage, Mr. Graham? A. I sold them. Q. To whom did you sell them? A. To Mr. Owings."

We can find nothing in the record that in any way tends to contradict the evidence of Mr. Graham. There is some evidence tending to show that a Mr. Van Scoy of Minneapolis, one of the coterie of gentlemen who occasionally made investments in Oklahoma, visited Greer county, for the purpose of looking over the field from an investment standpoint, and made a report of conditions as they appeared to him to his friends. It seems he selected a list of what he considered good investments from the Hagan applications, part of which he took himself, and recommended the balance to others of his friends; the Howington loan falling to Graham. The evidence shows, however, that these parties were acting independently, and that, whilst Van Scoy might indicate to Graham and his other friends the advisability of making certain loans, they were at liberty to refuse to act upon his suggestions after the papers were submitted to them. The evidence on that point is not in conflict with Mr. Graham's explanation of his relations to Hagan, and we do not think that any inference of agency between Graham and Hagan can be fairly drawn from it.

The judgment of the court below is reversed, in so far as it is adverse to the plaintiff in error, and the cause remanded, with directions to enter judgment and decree in conformity with the views herein expressed.

All the Justices concur.