First Trust Joint Stock Land Bank of Chicago, Appellant, v. S. E. Noland et al., Appellees.

No. 43147.

June 19, 1936.

1306

Whitney, Whitney & Stern, for appellant.

C. E. Pendleton and W. J. Allen, for appellees.

RICHARDS, J.—In this forcible entry and detainer action plaintiff claimed it was owner of and entitled to the possession of a certain farm in Buena Vista County on March 1, 1935. Defendants claimed they were entitled to occupy said premises as the tenants of plaintiff for the year beginning on that date. Plaintiff had foreclosed a mortgage on the farm, and the year of redemption expired on January 13, 1935. Plaintiff acquired title by sheriff's deed on January 14, 1935. Defendants were occupying the premises as lessees of the mortgagor title holder, the lease term ending February 28, 1935. From some time in 1932 until the trial of this case I. E. Wortman was employed by plaintiff as "fieldman". In October, 1934, Wortman came to the farm in question, and advised defendants that he was a representative of plaintiff, and there was a conversation between him and defendants with reference to the leasing of this farm by plaintiff to defendants for the year beginning March 1, 1935. Defendants suggesting cash rent, Wortman stated that plaintiff ordinarily did not rent their farms for cash. Defendants thereupon informed Wortman that they would agree to pay grain rent. On November 17, 1934, Wortman mailed a letter to defendants in which he referred to the October conversation. In the letter Wortman stated he had further information relative to the matter and consequently had prepared and enclosed in the letter a lease in triplicate on a crop share basis. The letter suggested that defendants attach their signatures to the leases, with an acknowledgment before a Notary, if defendants desired to lease the farm and submit the leases to the plaintiff bank for its possible approval. The letter suggested that defendants return all three copies to Wortman after being so signed so that they might be forwarded to the bank with Wortman's comments. The letter also stated that the bank required of the defendants a sworn financial statement, a form for which was enclosed in the letter. The letter also enclosed two copies of an agreement to be signed by the holder of a chattel mortgage on defendants' prop-

erty subordinating the chattel mortgage to the lien provided for in the leases. The letter also contained the following statement: "You understand, of course, that the final approval of this lease contract can only be made in the Chicago office and until your copy of lease with an official signature of the bank is received you do not have this farm rented. It is our desire that you complete this form within the next few days." Defendants signed and acknowledged the lease in triplicate, executed the financial statement, procured the execution of the subordination agreement, and mailed all these papers to Wortman on November 21, 1934. The lease contained a provision that in the event of a redemption from the foreclosure sale on or before January 13, 1935, the end of the year of redemption, or in case of application for extension of the period of redemption, then plaintiff might terminate the lease forthwith by written notice. The lease also reserved to plaintiff the right to sell the leased premises and therefor reserved the right to terminate the lease on or before February 1, A. D. 1935, by giving to lessee notice of election to terminate lease not less than 30 days prior to such date. The lease provided for compensation to lessees for any plowing done by them in the event of the exercise of either of said rights to terminate. After mailing these instruments to Wortman defendants received no communications from Wortman nor from plaintiff until December 21, 1934. It is undisputed in the testimony that on that date there was a transaction between Wortman and the defendant S. E. Noland, at a real estate office in Sioux Rapids. On behalf of plaintiff, Wortman had just turned back to a prospective purchaser of the land in question a check and contract which had been submitted as an offer to purchase. After Wortman had so done, defendant Noland stated to Wortman that he, Noland, wished to know about the leasing of the place and if it could be settled now there was some work he wanted to get done which he wouldn't do otherwise. Wortman replied that it was getting late, that that deal was all off (referring to the return of the papers to the proposed purchaser above mentioned), that there was no chance of selling the land now and told Noland to go right ahead with the work and that he, Wortman, would have the lease sent out right away to defendants. Noland testified that he believed and relied on said statements, and that thereafter and prior to February 21, 1935, though he had opportunities to rent other good farms he did not

do so on account of relying on Wortman's above mentioned statements and that after February 21, 1935, there remained no unrented farms in the locality. Noland also testified that on account of such reliance on Wortman's statements, defendants went about preparations to farm the place for the year 1935; filled the barn with hay and straw; started to get wood for summer, did some repairing, bought a team, got a team ready to put in the crop, did the plowing and contracted the sale of milk during 1935 from twenty or more cows. There was no further communication between plaintiff or Wortman and the defendants until February 21, 1935, on which date plaintiff delivered to defendants a notice that the farm had been sold and requesting that they vacate by March 1, 1935.

Defendants claimed they were entitled to possession of the premises for one year from March 1, 1935, on several grounds, among which are, first, by reason of the written lease, second, because plaintiff was estopped to deny defendants were entitled to such possession on account of the representations made by plaintiff's agent when plaintiff was in duty bound not to mislead defendants to their injury. The principal complaint of plaintiff is that the court erred in submitting this issue to the jury. Plaintiff says there was not sufficient evidence to warrant the court in so doing, and further insists that no matter what representations or agreements were made by plaintiff's agent Wortman, defendants were not entitled to depend on such representations as being authorized by plaintiff because in the letter of November 17, 1934, Wortman had notified defendants that they were to understand that the final approval of the lease could be made only in the Chicago office, and until a copy of the lease was received by defendants with an official signature of the bank the defendants would not have the farm rented.

The question of the extent of the authority of Wortman, particularly with respect to his undisputed verbal representations made on December 21, 1934, to the effect that Noland should go right ahead with his work and that he, Wortman, would have the lease sent out right away to Noland, is fraught with difficulty. Plaintiff has not seen fit to offer Wortman or any other witness in denial of Wortman's authority to make this verbal representation. Of course, such absence of denial did not relieve defendants of the burden ordinarily resting upon them to establish that the agent with whom they dealt was clothed

with authority or that his acts were adopted by the principal. But it is a general principle of law that whatever evidence has a tendency to prove an agency is admissible even though it be not full and satisfactory, and it is the province of the jury to pass upon it. Joyce Co. v. Rohan, 134 Iowa 12, 111 N. W. 319, 120 Am. St. Rep. 410. It is admitted that Wortman represented the plaintiff as its "fieldman" in connection with the renting of its lands, but the dispute is as to the extent of his authority particularly as to leasing the land in controversy to defendants. Aside from the matters already set out practically the only evidence concerning the extent of such authority must be gleaned from letters between Wortman and plaintiff which were brought into court by plaintiff upon defendants' petition for their production, and from plaintiff's conduct and attitude in connection with these letters. It has been held that the relationship may properly be established by communications that have passed between the alleged principal and agent. Donaldson v. Kenegy, 197 Iowa 893, 196 N. W. 587. And it appears to us that an examination of such letters between Wortman and plaintiff as are in evidence and consideration of plaintiff's conduct warrants saying that the jury could have found that plaintiff had left to Wortman's discretion and authority the leasing of these lands to defendants. As already shown, it was on November 21, 1934, that defendants mailed to Wortman the leases executed by them, the property statement and the chattel mortgage agreement; it was on December 21, 1934, that Wortman made the oral representation, and it was not until February 21, 1935, that defendants were notified that they were required to remove from the premises on March 1, 1935. On the same day on which defendants received through Wortman notification to remove from the premises, a letter was written by Wortman to plaintiff reviewing the situation, for the information of plaintiff, and in such review Wortman writes plaintiff that he had talked with Noland about a lease at one time and that Noland wanted a cash contract. Then follows a statement by Wortman that may be said to imply that he had been clothed by plaintiff with authority either to make the lease with Noland or to take the course he followed. The words could imply that Wortman was exercising a discretion he had as agent, and instead of then making the lease to Noland, he thought best to draw the papers and send them to him. The exact words used are, "I did not *make the lease then*

but *thought best* to draw them and send them to him." There is in evidence no denial or repudiation by plaintiff of this inference by the agent as to his authority, and the inference is found in the correspondence between the agent and his principal in the course of the functioning by the agent. It was a part of the facts and circumstances of the relationship between plaintiff and its agent and was substantive evidence with respect to the character of the agency. Donaldson v. Kenegy, 197 Iowa 893, 196 N. W. 587. Nor can it be said that this inference lacks acquiescence therein by the principal, as the evidence would warrant a finding that plaintiff was adopting all authority that was being exercised by Wortman in connection with the Noland lease, as appears in other letters and from plaintiff's conduct in connection with the letters. For instance, in a letter of November 28, 1934, Wortman tells plaintiff that the delivery to Noland of his copy of the lease should be withheld until it is determined whether a sale of the land by an agent, one Diercks, can be effected. This was the sale which later was rejected and the papers handed back to the intending purchaser by Wortman on December 21, 1934, just previous to Wortman's representation to Noland that it was then too late to sell the land and that Noland should go ahead with his work (on the land in controversy) and that Wortman would have the leases sent right out to Noland. Again in a letter of December 31, 1934, Wortman, writing plaintiff that he had information that one Brees was a possible purchaser of the land in question, advised plaintiff that such fact should be kept as quiet as possible, and among other things Wortman again tells plaintiff to hold the Noland leases even if the sale should be made to Brees, with the further assurance made by Wortman to plaintiff in this letter that he, Wortman, can handle "this tenant". Attention is called to two things, first, that these instructions from Wortman to plaintiff, contained in the letters, seem to have been adopted and followed by plaintiff as shown by the fact that not until February 21, 1935, did plaintiff afford Noland any information that he was required to vacate on March first; second, the jury could have attached significance to the designation of Noland as "this tenant", the designation being made subsequently to the transaction of December 21, 1934. Further, as indicating that plaintiff was adopting all authority that Wortman was exercising in connection with the Noland lease, there was before the jury for con-

sideration the letter written by plaintiff to Wortman which enclosed the notification to vacate the premises. For in this letter plaintiff stated, in substance, that, although Wortman was then working in a different territory, nevertheless the enclosures were sent to him because of the assurance, already mentioned, that he, Wortman, could handle "the tenant on this matter". This letter could have been considered as further confirmation of the proposition that plaintiff had left to Wortman the authority and discretion with respect to renting to Noland, and the jury could also have taken into consideration the significant reference by plaintiff to Noland as being "the tenant on this matter". It might also be added that in this letter plaintiff, though enclosing the leases to be tendered back to Noland, did not enclose but retained the agreement subordinating the chattel mortgage lien to plaintiff's landlord's lien, and from the record it would appear that plaintiff still retains this instrument. Deductions that might be drawn from that fact perhaps need not be discussed because aside therefrom it appears to us that the jury could have found from all of the evidence that plaintiff did in fact leave to Wortman the discretion and authority to determine the question of leasing the land to Noland, and that plaintiff was estopped to deny the force of Wortman's undenied oral representations made to Noland on December 21, 1934.

In resistance to any such possible deductions from the evidence as to the extent of Wortman's authority, plaintiff strenuously insists that the letter of November 17, 1934, from Wortman to defendants, fully protects plaintiff from any assumption that Wortman had authority to make the oral representations. The portion of that letter on which plaintiff relies is Wortman's statement that defendants are to understand that the final approval of the lease can only be made in Chicago and until a copy with an official signature is received the defendants do not have the farm rented. In support of its contention plaintiff cites Adams v. Iowa Gas & Elec. Co., 200 Iowa 782, 203 N. W. 229. We do not find that case in point because therein the fact was that the agent in question had not even apparent authority with respect to the making of the contract or the arranging of any of its terms. That was one of the reasons for holding that anything he may have said as to the effect of the contract or what it should cover constituted mere opinion on his part, and pertained to matters wholly outside the scope of his employment. A different situa-

1312

tion is in the case before us in that Wortman was the representative of plaintiff, a nonresident corporation, and admittedly his authority had to do with the renting of the land and with the terms of the lease agreement, and the question is not whether he had any authority, but is, how far did it extend?

It should be noted that the statement in Wortman's letter relied on by plaintiff does not have any appearance of purpose on part of a principal to protect himself against acts of an agent of limited authority. On the contrary, as shown by the correspondence, it was a statement originating as a part of a course of action the agent, in his own discretion, "thought best", and had the jury found as to the extent of Wortman's authority as we have above stated they could have done, then it is obvious that the words in Wortman's letter were a denial of the truth, and no more effective than any other misrepresentation of fact. There is in the record even an appearance that these words in Wortman's letter were made not for the purpose of conveying to Noland knowledge of any actual facts, but through misrepresentation were intended to create a shield or defense in event the agent or his principal should seek to avoid consequences of the possibly devious course on which Wortman as plaintiff's agent was embarking. That is found in the acts and attitude of Wortman. Undisputably he had made the oral representations to Noland in December. Wortman, so knowing, on the same day of Noland's refusal to surrender possession as demanded on February 21, 1935, and with Noland relying on Wortman's representations as having at least the attribute of honesty, hastens to write to his principal, the plaintiff, the letter of that date, a particular purpose therein apparently being to point out to plaintiff that in the files would be found a copy of the letter of November 21, 1934, containing the defensive matter now urged by plaintiff. In the letter Wortman makes no denial of the representations to Noland, but instead he buckles on what the jury could have found was his ready shield. We think the jury could have found the words of the letter contained neither the truth nor good faith, nor anything of which defendants were bound to take notice.

Our conclusions determine adversely to plaintiff several exceptions to the instructions and the exceptions based on other grounds have been examined and no error prejudicial to plaintiff has been found therein.

The question as to plaintiff being entitled to a new trial on account of alleged misconduct of defendants' counsel in their argument to the jury, has been considered. We find nothing therein amounting to prejudicial error and the argument in question has such similarity to that in prior cases holding prejudicial error did not appear that we deem it would be of no value to set out the record.

Having examined all assignments of error and finding no error in any of the respects claimed by appellant, the case is affirmed.—Affirmed.

DONEGAN, C. J. and HAMILTON, PARSONS, KINTZINGER, MITCHELL, ANDERSON, and STIGER, JJ., concur.